*14cv3768*
*JRT/LIB*

*TABLE OF CONTENTS*

# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

PLAINTIFF:

    Robert Bonczek

Case No._____
      (to be assogned)

vs.

**Nature of Case:** ERISA
Pension Plan – Denial of
Benefits

DEFENDANTS

    Board of Trustees
    National Roofing Industry Pension Plan
    (Fiduciary)

    Zenith Administrators
    Third-party Administrative Manager

SCANNED
SEP 2 3 2014
U.S. DISTRICT COURT MPLS

*FILE 2013*

## TABLE OF CONTENTS

| Para | Topic |
|---|---|
| 7-10 | Statement of the Claim |
| | Exhibit A - Denial Documents |
| | Exhibit B - Summary Plan Description (Seperate file) |
| 11 | Late Retirement Adjustment Factor |
| 12 | Changed Event Dates |
| 13 | Retirement Benefit Election Statement for Non-Married Participants |
| | Ex. C (6 pgs) |
| | Ex. C1 2/14/13 memo (3 pgs) |
| | Ex. C2 5/3/13 memo (2 pgs) |
| | Ex. C3 5/10/13 memo (2 pgs) |
| | Exhibit D Calculation Summary (14 pgs) |
| 14 | Meeting w/ Chris Reitmeier |
| | Ex. E 1/17/14 ltr (1 pg) |
| | Ex. E1 6/15/14 ltr (3 pgs) |
| | Ex. E2 7/3/14 ltr (1 pg) |
| | Ex. E3 7/3/14 (2pgs) |
| 15 | Notice of Benefit Suspension |
| | Ex. F 9/18/09 ltr (2 pgs) |
| 16 | Payment of Benefits after age 70$\frac{1}{2}$ |
| | Ex C 2/14/13 ltr to Zenith |
| | Ex E   Wilson-McShane ltr 1/17/14 |
| | "  "     "       "       " 7/3/14 |
| | "  "     "       "       " 7/3/14 |
| 17 | Statute of Limitations |
| 18 | Interference |
| | Ex. G1 ltr of 9/5/12 |
| | Ex. G2  ltr of 10/18/12 |
| | Ex. G3 Fax of 4/30/14 |
| | Ex. G4 ltr of 5/4/14 |
| 19 | Exhaustion of Remedies - Futility |

Request For Relief

STATEMENT
OF THE
CLAIM

## STATEMENT OF THE CLAIM

7. The purpose of this claim is to gain assistance in recovering retirement benefits denied without cause and damages resulting from this denial.

8. Application for retirement benefits from the National Roofing Industry Pension Plan (NRIPP), #001-EIN 36-6157071, was made in Sept. 2012 and denied May, 2013.

9. Zenith Administrators transmittal letter dated May 23, 2013 and Summary of the Board of Trustees Minutes denying benefits is enclosed as Exhibit A and serves as the premise for this claim.

10. ERISA, the Plan Document (Article V 6.171) and the Summary Plan Description, Exhibit B, requires a detailed explanation, in layman's language, stating the specific reasons for a claim denial.  Zenith/Board's explanation fails this test. Both documents are confused, disconnected, and inaccurate as discussed below (to facilitate referencing applicable paragraphs of these two documents are noted throughout this claim).

11. <u>Late Retirement Adjustment Factor</u>

a. (Ref: para's 2,3,11,12 - denial documents) refer to this factor as an important element in determining retirement elegibility.  It doesn't even belong in this letter.  There is no connection between an arithmetic adjustment and retirement eligibility.  Its nothing more than an important sounding filler.

-1-

11. <u>Late Retirement Adjustment Factor</u> (Cont'd)

b.   This first paragraph typifies Zenith/Board's approach to explaining benefit denial.  They talk around issues without addressing the problems.

The crux of the problem simply put, is that Zenith/Board doesn't want to pay retirement benefits due under ERISA rules and have dedicated their efforts toward achieving that end.  Please consider the following examples.

12. <u>Changed Event Dates</u>

(Ref: para's 3,4,6,12 - Denial documents)

a.   Changing these dates marks  the beginning of a transition from ERISA approved methods to Zenith/Board methods.

The use of significant (i.e. eligibility) dates recognized by ERISA/SPD in benefit calculation are replaced by artificial "convenience" dates having no place or basis in benefit calculation.

b.   The dates in question are the Annuity Start Date (ASD) and Retroactive Annuity Start Date (RASD).  Both dates can be used as either eligibility dates in benefit calculation or as first payment dates depending on the application.  Zenith/Board chose to ignore the benefit eligibility aspect substituting a "convenience date" in my case arbitrary dates were used in my benefit calculation.

c.   This might seem to be an unimportant change. However it effectively reduced retroactive benefits by 56 months by 10/1/12.  This was done without authority simply by changing the use of two dates, ASD and RASD.

-2-

13. <u>Retirement Benefit Election Statement for Non-Married Participants</u> (Exhibit C)

(Ref: para's 3, 6, 7, 13 - denial documents).

a. This packet, dated 1/31/13, demonstrates the impact of unauthorized changes in benefit calculation.

b. Page 1 of the Benefit Election Packet shows created convenience dates for the RASD of 10/1/12 and ASD of 2/1/13.  Option 1 shows a monthly benefit of $1,420.12, no retroactive benefit and Option 2 shows a $1,359.56 benefit with a one time catch-up, or retroactive annuity of $5,505.15.

c. The retroactive annuity actually due at this time was $75,318.32.  Exhibit D - Calculation Summary shows 56 months (1/19/08 - 10/1/12) due x a monthly benefit of $1,344.97 = $75,318.32 as calculated per ERISA/SPD guidelines.  To say the least this is a significant difference.

d. My benefits were fully accrued and fully vested in 2002.  Once benefits are fully vested they are nonforfeitable.

> "Vesting of Pension Rights occurs when all eligibility requirements of a voluntary non-contributory pension plan have been met and a retiree may not thereafter be divested of his rights."[1]

e. Page 6 of the Benefit Election Packet shows an extended schedule of benefits.  No mention is made anywhere of the missing $69,813.17 ($75,318.21 - $5,505.15) in retroactive benefits due.

1- USCA 29, Labor Ch. 18 §1053, pg 566, Note 13, Turner & Local Union No. 302, Int'l Bros of Teamsters, Chauffers, Warehousemen and Helpers of America, C.A. 9, (Cal) 1979, 604 F.2d 1219

13. <u>Retirement Benefit Election Statement</u> (Cont'd)

f. On 2/14/13 I wrote to Zenith (Ex. C enclosed) concerning the
Benefit Election packet and their calculations, among other things.
I really never got an answer.  I followed up with two more memo's
on 5/3 and 5/10/13 (also enclosed as Ex. C).  After receiving
the benefit denial documents (dtd 5/12/13) I called Zenith regard-
ing Para 7 of the Summary and again stated that I was right about
retroactive benefits.  Zenith's response was "Well why don't
you just prove it."  That's what I'm doing here.

g. Changing ERISA designated dates allows Zenith/Board to quietly
realize unearned profits at the expense of the retiree.

h. At the same time the retiree should be grateful that the "late
retirement adjustment factor" mentioned repeatedly has been
computed correctly in the $75,318.32 in benefits that Zenith
Board has just taken away without explanation, reason, or
authority.

Its things like this that just make me feel blessed.

14. <u>Meeting with Chris Reitmeier, Wilson-McShane</u>

a. On 8/7/14 I had a meeting with Chris to cover several things
that had come up.

b. The first concern was the detail backing up Zenith's calcu-
lations for benefits.  I had only summary data.  On 7/3/14
Chris sent me a memo with another summary calculation.

c. This memo also served notice concerning benefits that had to
begin no later than age $70\frac{1}{2}$.  This was one of three memos on this
subject that I received. On 2/14/13 I brought this issue up
in a memo to Zenith (Ex C) and was ignored.

-4-

14. <u>Meeting</u> (Cont'd)

   d. Another question that came up was why I suddenly started
   receiving application packets. I'd filled out the forms before
   and still had a pension benefit denial being challenged leaving
   my first application still open.

   e. Chris responded that applications expired every 6 months and that
   I hadn't completed the entire application that was contested.

   f. There is no application expiration date mentioned in the SPD
   and nothing on any form indicating a expiration date. My
   initial application is still open until Zenith/Board answer
   the questions raised during the application process on the
   phone, in correspondence, and again here. The impasse was
   caused by Zenith/Board. As soon as they answer the questions
   put to them I'll be able to fill out whatever forms they want.

   g. Given the newly announced expiration dates its reasonable to
   assume that another Benefit Election packet would be prepared
   (the first packet was dated 1/31/13) like the first only with
   fresh ASD and RASD dates.

   h. The impact of another forfeiture event would probably look
   something like this:

|  |  |
|---|---|
| Loss of Benefits 1/19/08-10/1/12 per Zenith/Board | $ 75,318.32 |
| Addt'l loss 10/1/12-9/30/14 (24 months x $1,344.97 mo. benefit) | 32,379.28 |
| Total loss of benefits @ 9/30/14 | $ 107,597.60 |

   i. The sequence of events reported here can and probably will
   repeat itself. Zenith/Board can continue to create forfeiture
   events ignoring ERISA/SPD rules, eliminating retroactive
   benefits, acting with autonomy, and no authority.

14. Meeting (Cont'd)

j. I'm not an attorney or even knowedgeble in the law.  But common sense says that contributions made in my name, 100% vested, are for all practical purposes my property.  Zenith/Board exercised its custodial responsibility in removing my file from its active benefit earning role into a suspense account when I turned 65.  Since that time, and before, Zenith enjoyed the use of that money and any profits earned on it.  This should be enough.  There were no proprietary rights transferred to Zenith/Board at any time.

k. Seizing my benefits seems like conversion to me.  I doubt that there is any precedent for this action in ERISA.

l. However I did find a number of authoritative references that seem to support my position.  Please consider the following:

> "Fiduciaries breach their duties of loyalty and care if they mislead plan participants or misrepresent terms or administration of plan and must also communicate material facts affecting interests of beneficiaries; this duty exists when beneficiary asks fiduciaries for information, and even when he or she does not."[2]

> "Under the Employee Retirement Income Security Act (ERISA), a fiduciary breaches his duty by providing plan participants with materially misleading information, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally."[3]

[2] USCA 29, §1109 Ch 18, pg 554, note 102:  Lively v. Dynegy Inc. S.D. Ill 2006, 420 F. Supp. 2d 949, Labor & Employment

[3] USCA 29, §1109 Ch 18, pg 553, note 101:  AEP Erisa Litigation, S.D. Ohio 2004, 327 F. Supp 2d 812 Labor & Employment

-6-

14. <u>Meeting</u> (Cont'd)

1.        "Misrepresentations and misleading communications
          to ERISA plan participants support a claim for
          breach of fiduciary duty."[4]

15. <u>Notice of Benefit Suspension</u> (Exhibit F)

      (Ref:  para's 7, 8 denial documents)

a. This form letter isn't contained  in the Plan or SPD.  Apparently

   it originates with Zenith/Board.  It shows my Normal Retirement

   Date correctly as 01/19/08.  These notices were received

   periodically with the same NRD until the Benefit Election State-

   ment dtd 1/31/13 was received.  At that time it apparently

   disappeared never to resurface.  The second page of the letter,

   second paragraph states "if you are due any pension benefits

   you will be notified of the effective date."  The last sentence

   of the fist page of the letter states "The Plan does not, how-

   ever, make up or otherwise adjust your benefit for months you could

   have received a Plan payment but chose not to do so." This

   statement conflicts with the first paragraph of page 2.  The

   reference to "effective date" should distinquish between the

   retroactive eligibility date and the first monthly payment date.

4) USCA 29, §1109 Ch 18, pg 553, note 101:  Heise v. Genuine
   Parts Co., D. Minn. 1995, 900 F. Supp. 1137 Labor & Employment

16. Payment of Benefits after age 70½

    (Ref:1) Para 8 - denial document
        2) Ex. C 2/14/13 ltr to Zenith
        3) Para 14c this claim
        4) Ex. E Wilson-Mcshane letter of 1/17/14
        5) Ex. E Wilson-McShane letter of 7/3/14
        6) Ex E Wilson-McShane 2nd letter of 7/3/14
        7) SPD pg 49

a. The reader can see from the number of references above that this subject has been pretty much beat to death.

b. Zenith/Board stated in 1) above that the Plan is required to commence benefit payments no later than April 1st following the year in which you attain age 70½.

c. We all know this. My letter to Zenith (2) above reported this situation 1½ years ago in anticipation of this deadline.

d. Zenith/Board states they need a new application befotre they can begin payments. I covered this problem in para. 14 of this claim. Once again my open application is on file Zenith just refuses to finish processing it, creating one more fabricated obstacle.

e. IRS Pub. 575 and Instructions for Form 5329 don't require the Fiduciary/Retiree to agree on a benefit amount nor do they require another application. The only require a tax on benefit payments beginning 4/1/14.

f. The responsibility here rests with Zenith/Board. If no benefits are received Zenith/Board are responsible for any tax/penalties. If I were to fill out a second (needless) application I suspect a situation like that described in para 14h, this claim, would probably occur.

g Instead of more games Zenith/Board should just cooperate and resolve this claim.

17. <u>Statute of Limitations</u>

a. This claim was made against the fiduciary on a timely basis.  USCA §1113 allows for three and six year time limits to file suit for breach of fiduciary duty. I believe the three year time limit applies here

> "...it applies three years after earliest date on which plaintiff had actual knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or other-wise violated act..."5

The actual knowledge date referred to here would by May 23, 2013, the date of Zenith's benefit denial transmittal letter.

18. <u>Interference</u>

a. The actions of Zenith/Board should be considered interference, actually refusal, to allow pension benefits.  However the interference goes beyond difficulties with the administrator/fiduciaryI've enclosed a few letters concerning related events:

1) Ex. G1 - my ltr dtd 9/5/12 concerning the theft of I.D. documents from me and from my storage unit.
2) Ex. G2 a second letter dtd 10/18/12 on related events was also sent.
3) Ex. G3 - on 4/30/13 I faxed David Marshall, EBSA, on security problems.
4) On 5/4/14 I sent another letter to David Marshall.  Para's 11-13 page 3 of the letter is a very interesting situation. again on security.  I also talked to him about this on the phone but haven't gotten a response.  The problem I'm referring to was that my phone calls were being diverted to one individual, an EBSA employee.  Whenever I called the general # at the Kansas City DOL I would get the same person on the first ring.  I know calls are routinely transferred to other phones but not in this manner.  I then wnt to a pay phone, called the same number and got the standard recorded message a caller always gets.

5- USCA 29, Labor, Ch 18, §1113, pg 583 Note 1, Ells v. Singh, S.D.N,Y. 2007, 531 F. Supp 2d. 552 as amended.

19. **Exhaustion of Remedies - Futility**

   (Ref: pg 48 SPD)

a. The above reference acknowledges the fiduciary's responsibilities
   and the claimant's obligations.  However the actions/decisions
   described in this claim really go beyond an internal appeal.
   Zenith/Board's actions and decisions before and after the denial
   of benefits are dedicated to refusing to honor their obligations
   under ERISA rules.

b. Information offered to the plaintiff was misrepresented and
   misleading, and in some cases outright incorrect.  The most
   notable examples are retroactive benefits and misuse of critical
   dates in benefit calculation.  These incidents were inten-
   tional, material, and the dollar magnitude makes them significant
   breaches of duty.

c. USCA 29, Labor Ch. 18, §1132 has devoted a huge section to the
   exhaustion of remedies - futility.  None of the ones I saw were
   for outright refusal of benefits without cause.  The only option
   left here is civil action.

REQUEST FOR RELIEF

1. I included a Benefit Calculation Summary and detailed
schedules caculating benefits per the SPD (Exhibit D).
The award of monthly benefits in the amount of $1,344.97,
as I calculated them should be made to me.

2. Retroactive benefits totalling $107,597.60 as of 9/30/14
(or adjusted if payment date is different) should be made
immediately.

3. I'm asking the court to award damages - penalties and
interest from the date I became aware of the fiduciary
breach (5/23/13) forward to the date of decision on
this issue.

4. Finally I'm requesting that ongoing responsibility for
my pension and the monthly payments be assigned to PBCG
Corp. or another comparable fiduciary determined by the
court.

5. Since I'm not sure of what is appropriate
Relief. I'm asking that the judge award
"all additional Relief to which I'm
entitled to. i.e. tax penalty etc."

-11-

EXHIBIT A
DENIAL DOC.

# NATIONAL ROOFING INDUSTRY PENSION FUND

P. O. Box 721680
Houston, Texas 77272-1680
TOLL FREE - 800-595-7209 - LOCAL- 713-219-1200 - FAX- 713-219-1299
Web site - www.zenithadmin.com



May 23, 2013

Mr. Robert L Boczek
Po Box 18782
Minneapolis, MN 55418

Dear Mr. Boczek:

Enclosed is the decision of the Board of Trustees in the matter of your appeal of the denial of benefits from the National Roofing Industry Pension Plan as set forth in the Minutes of the meeting of the Board of Trustees held May 20-21, 2013.

In summary:

In addition, Section 3.3(B) of the Plan dictates the late retirement adjustment factors that must be applied on a Late Retirement Pension. The factors are different and keep increasing for each additional year that a Participant delays his retirement.

Therefore, Mr. Bonczek is entitled to receive his pension only as of October 1, 2012 and not as of January 19, 2008, when he turned 65. Moreover, his benefit has been computed correctly, which is to commence as of the date of his retirement, October 1, 2012, but with the late retirement adjustment factors calculated to reflect his Late Retirement.

The Board noted that Mr. Boczek has failed to present any evidence to demonstrate that the decision of the Fund Office was incorrect in denying him a Late Retirement Benefit as of January 19, 2008. The Trustees noted that they have a fiduciary obligation and are required by law to interpret and administer the Pension Plan in accordance with the terms of the Plan of Benefits and in a uniform and non-discriminatory manner. Accordingly, upon motion duly made, seconded and unanimously carried, the action of the Fund Office in denying Mr. Bonczek's application for a Late Retirement Benefit as of January 19, 2008, is upheld and his appeal is denied for the foregoing reasons. This decision represents the Trustees' final action in this case.

Very truly yours,



Valerie D. Elsey
Administrative Office

Enclosure

cc:     Librado Arreola, Esq.
        Rob Fowler, Esq.
        **Local Union No. #96**
        Pension File

NATIONAL ROOFING INDUSTRY PENSION PLAN
May 20 and 21, 2013

Appeal of Robert L. Bonczek

Robert L. Bonczek worked in Covered Employment from 1979 through December 2002. He earned 14 Vesting Credits. His date of birth is January 19, 1943.

Mr. Bonczek applied for a Retirement benefit in September 2012. Additional information was requested of him by the Fund Office in order to complete his application. The Fund office then processed his application once it was complete and on January 31, 2013, provided him with his "Retirement Benefits Election Form for Non-Married Participants." His Benefit Election form states that his benefit will commence on October 1, 2012.

Mr. Bonczek filed a timely appeal in February 2013. In his appeal, he lists several reasons for disagreeing with the Fund Office's benefit calculation. He complained that, among other things, he did not receive a roll.over form to an IRA, the annuity starting date is incorrect, the retroactive annuity starting date ("RASD") is incorrect, the RASD should be when he turned 65, and the pension benefit calculation may not be correct. However, on May 3, 2013, he submitted a letter to the Fund Office withdrawing almost all of his appeal issues and the only issue remaining is his Retroactive Annuity Starting Date. He submitted additional documents to the Fund Office on May 10, 2013. He attached a letter he received from the Fund Office dated May 25, 2010, entitled "Notice of Benefit Suspension." He states that this letter is evidence that his RASD should be January 19, 2008, when he turned 65. According to this letter, it is his position that his benefits were suspended when he turned 65 and that the letter states that he is entitled to retroactive payments with interest.

The May 25, 2010 letter states:

> The National Roofing Industry Pension Plan's records indicate that you are approaching or have attained age 65 and have participated in the Fund at least 5 years without a loss of service.
>
> A vested participant in the National Roofing Industry Pension Fund is eligible to retire at any [time] after the later of his 65th birthday or fifth anniversary of participation and to begin receiving full Normal Retirement Benefits from the Plan. The Plan pays benefits to eligible participants who retire and apply for them.
>
> You may be eligible to begin receiving pension benefits whenever you wish to stop working. If you continue to work after your Normal Retirement Date (NRD), your retirement benefit payments will not begin until you decide to actually retire and apply for them. The Plan is required to commence benefit payments no later than April 1st following the year in

which you attain age 70 ½.

While you are an active employee, you will continue to accrue a benefit under the Plan in accordance with its terms. It is likely that, because of additional service credit you earn, your monthly pension benefit will be larger when you retire than it would have been had you chosen to retire at your Normal Retirement Date. The Plan does not, however, make up or otherwise adjust your benefit for months you could have received a Plan payment but chose not to do so.

That letter was accompanied with an application form and instructed the participant how to complete the application. However, Mr. Bonczek did not submit his pension application to the Fund Office until September 10, 2012.

Mr. Bonczek's application for a Late Retirement benefit must be considered under the Plan then in effect when he last worked in Covered Employment, which is 2002. The Plan in effect when Mr. Bonczek left Covered Employment is the 1999 Plan. Section 3.3(A) of the Plan states, "An Employee may, on his Normal Retirement Date, elect to postpone his pension payments until a later date. In such event, Pension payments shall commence on the first day of the month coincident with, or next following, the date of actual retirement."

Section 3.3(C), which is entitled "Payment of Late Retirement Pension," states:

The monthly Pension payable in the event of Late Retirement will be payable on the first day of each month. The first payment will be made on the first day of the month as of which the Employee's application for a Pension is approved by the Trustees, and the last payment will be the payment due next, preceding the Pensioner's death, or the 60th monthly payment, whichever is later. Provided, however, Pension payments will be effective on the first day of the month following the month in which the completed application is filed in the offices of the Fund Administrator or the Employee's Late Retirement Date, whichever is later.

In addition, Section 3.3(B) of the Plan dictates the late retirement adjustment factors that must be applied on a Late Retirement Pension. The factors are different and keep increasing for each additional year that a Participant delays his retirement.

Therefore, Mr. Bonczek is entitled to receive his pension only as of October 1, 2012 and not as of January 19, 2008, when he turned 65. Moreover, his benefit has been computed correctly, which is to commence as of the date of his retirement, October 1, 2012, but with the late retirement adjustment factors calculated to reflect his Late Retirement.

The Board noted that Mr. Bonczek has failed to present any evidence to demonstrate that the decision of the Fund Office was incorrect in denying him a Late Retirement Benefit as of January 19, 2008. The Trustees noted that they have a fiduciary obligation and are required by law to interpret and administer the Pension Plan in accordance with the terms

of the Plan of Benefits and in a uniform and non-discriminatory manner. Accordingly, upon motion duly made, seconded and unanimously carried, the action of the Fund Office in denying Mr. Bonczek's application for a Late Retirement Benefit as of January 19, 2008, is upheld and his appeal is denied for the foregoing reasons. This decision represents the Trustees' final action in this case.

The Plan participant and appellant is hereby advised that he is entitled to receive, upon written request and free of charge, reasonable access to, and copies of, all relevant documentation used by the Trustees in reaching this decision. Please be advised that Section 502(a) of ERISA provides that a participant or beneficiary of an employee benefit plan may file suit to recover benefits due under the terms of the plan, to enforce the terms of the plan or to clarify the person's right to future benefits under the plan.

EXHIBIT C
BENEFIT
ELECTION

*EXHIBIT C*

**National Roofing Industry Pension Plan**
P. O. BOX 721680
Houston, TX 77272-1680
Telephone: (800) 595-7209

January 31, 2013

Robert Leon Bonczek
P O. Box 18782
Minneapolis, MN 55418

Re: Retirement Benefits Election Statement for Non-Married Participants

Dear Robert Leon Bonczek:

Enclosed is your Retirement Benefits Election Form for Non-Married Participants for your use in selecting the benefit payable upon retirement. Please *review* your personal information for accuracy, *read* about your options and *take action* by completing and mailing the Benefit Election Form *within 30 days of receiving this notice*.

**Review Your Personal Information.**

| | |
|---|---|
| Date of Birth: | January 19, 1943 |
| Retroactive Annuity Starting Date: | October 1, 2012 |
| Annuity Starting Date: | February 1, 2013 |
| Name of Beneficiary: | Michael G Bonczek |
| Beneficiary's Date of Birth: | December 10, 1970 |

Based on the timing of your election your benefit has been calculated as of two dates: the annuity starting date (ASD) and the retroactive annuity starting date (RASD). Your retirement benefit and payment options are calculated at both of these dates to correct for the time between when you retire and when you receive your first pension check. You may elect to receive your "catch up" payments as a lump sum or you may use the value of the missed payments to increase your monthly retirement check.

**Read Your Options.**

**A. Single Life Annuity**

| Option 1 | You will receive a monthly pension of $1,420.12 for the remainder of your lifetime only. There are no survivor benefits for this form of payment. Monthly payments will commence as of February 1, 2013. |
|---|---|
| | *or* |
| Option 2 | You will receive a monthly pension of $1,359.66 for the remainder of your lifetime. Monthly payments will commence as of February 1, 2013. Plus, since your pension should have commenced as of October 1, 2012, you will receive a one-time catch up payment of $5,505.15. |

**B. 60 Month Certain and Life Annuity**

| Option 3 | This benefit pays $1,346.10 for the remainder of your lifetime or 60 monthly payments, whichever is longer. In the event of your death during the first 60 months from the date your benefits commenced, your primary beneficiary will receive $1,346.10 for the remainder of the 60-month period. In the event that your primary beneficiary does not survive this 60-month period, the benefits remaining will be paid to the contingent beneficiary as designated in your application. The 60-month period will begin as of February 1, 2013. Monthly payments will commence as of February 1, 2013. |
|---|---|
| | *or* |
| Option 4 | This benefit pays $1,291.54 for the remainder of your lifetime or 60 monthly payments, whichever is longer. In the event your death during the first 60 months from the date your benefits commenced, your primary beneficiary will receive $1,291.54 for the remainder of the 60-month period. In the event that your primary beneficiary does not survive this 60-month period, the benefits remaining will be paid to the contingent beneficiary as designated in your application. The 60-month period will begin as of October 1, 2012. Monthly payments will commence as of February 1, 2013. Plus, since your pension should have commenced as of October 1, 2012, you will receive a one-time catch up payment of $5,229.33. |

Pg 1 of 6

Robert Leon Bonczek
Retirement Payment Options
January 31, 2013

C.   **120 Month Certain and Life Annuity**

| Option 5 | This benefit pays $1,186.45 for the remainder of your lifetime or 120 monthly payments, whichever is longer. In the event of your death during the first 120 months from the date your benefits commenced, your primary beneficiary will receive $1,186.45 for the remainder of the 120-month period. In the event that your primary beneficiary does not survive this 120-month period, the benefits remaining will be paid to the contingent beneficiary as designated in your application. The 120-month period will begin as of February 1, 2013.  Monthly payments will commence as of February 1, 2013. |
|---|---|
| | *or* |
| Option 6 | This benefit pays $1,141.43 for the remainder of your lifetime or 120 monthly payments, whichever is longer.  In the event your death during the first 120 months from the date your benefits commenced, your primary beneficiary will receive $1,141.43 for the remainder of the 120-month period. In the event that your primary beneficiary does not survive this 120-month period, the benefits remaining will be paid to the contingent beneficiary as designated in your application. The 120-month period will begin as of October 1, 2012.  Monthly payments will commence as of February 1, 2013. Plus, since your pension should have commenced as of October 1, 2012, you will receive a one-time catch-up payment of $4,621.55. |

D.   **50% Joint & Survivor Annuity**

| Option 7 | You will receive a monthly pension of $957.07 for the remainder of your lifetime.  Should you die before your beneficiary, your beneficiary will receive a $478.54 monthly benefit for the remainder of the beneficiary's lifetime.  Payments will commence as of February 1, 2013. |
|---|---|
| | *or* |
| Option 8 | You will receive a monthly pension of $920.76 for the remainder of your lifetime.  Should you die before your beneficiary, he or she will receive a $460.38 monthly benefit for the remainder of his or her lifetime. Monthly payments will commence as of February 1, 2013. Plus, since your pension should have commenced as of October 1, 2012, you will receive a one-time catch-up payment of $3,728.08. |

E.   **62% Joint & Survivor Annuity**

| Option 9 | You will receive a monthly pension of $888.25 for the remainder of your lifetime.  Should you die before your beneficiary, your beneficiary will receive a $550.72 monthly benefit for the remainder of the beneficiary's lifetime.  Payments will commence as of February 1, 2013. |
|---|---|
| | *or* |
| Option 10 | You will receive a monthly pension of $854.55 for the remainder of your lifetime.  Should you die before your beneficiary, he or she will receive a $529.82 monthly benefit for the remainder of his or her lifetime. Monthly payments will commence as of February 1, 2013. Plus, since your pension would have commenced as of October 1, 2012, you will receive a one-time catch-up payment of $3,460.00. |

Robert Leon Bonczek
Retirement Payment Options
January 31, 2013

**Take Action.**

You must now decide how your benefits are to be paid after you retire.  After you choose your retirement benefit, please complete the Retirement Benefits Election Form for Non-Married Participants.  Be sure to (X) the proper box.  This form must also be signed.

**About This Statement.**

The calculation of monthly payments is based upon information given as true and correct.  Final approval of all benefit amounts rests solely with your Board of Trustees.

Should you have any questions regarding this matter, please feel free to contact the undersigned.

Si usted necesita informacion adicional o asistencia en Espanol, contacte a nuestra officina y se la proveeremos.

Sincerely,

*Lillian Everson*

Lillian Everson, Pension Analyst
Pension Department
(800)-595-7209 Extension # 111225
*Enclosures*
cc:  File

## National Roofing Industry Pension Plan
Payment of benefits before Normal Retirement

If you have completed the requirements for an early retirement benefit from the National Roofing Industry Pension Plan (the "NRIPP"), you may be eligible to begin pension payments before your normal retirement date. However, you are not required to begin payments early. If you have not reached your normal retirement date you may elect to defer payment of your Plan benefit. The NRIPP's early retirement requirements and normal retirement date are as follows:

Early Retirement Requirements

To be eligible to receive an early retirement benefit you must be at least age 55 and have stopped working in the industry for 30 days and have met one of the following service requirements:

- Participants entering the NRIPP prior to 2004:   10 years of vested service
- Participants entering the NRIPP after 2003:   15 years of vested service

Normal Retirement Date

Your normal retirement date is the first day of the month coincident with or next following the later of the following:

- Age 65 or
- The earlier of the 5th anniversary of the date you became a NRIPP participant or five years of vested service

The following information describes consequences of beginning pension payments before your normal retirement date.

If you elect to begin pension payments before your normal retirement date and you have not reached age 65 the amount of your monthly normal retirement benefit will be reduced. The table below illustrates the amount of reduction that would apply to a monthly pension that begins at each age between age 55 and normal retirement. However, if you have not worked at least 750 hours in at least one plan year beginning after your 49th birthday, then the reductions for benefits accrued prior to January 1, 2004 will be as shown in the table; but any benefits accrued after December 31, 2003 will not be eligible for an unreduced early retirement benefit no matter how many years of vested service you have, and the benefit reduction for these benefits will be ½% per month from age 55 to age 65.

| Benefits Earned Prior to January 1, 2004 | | | Benefits Earned After December 31, 2003 | | |
|---|---|---|---|---|---|
| Age | Vested Service | Benefit Reduction | Age | Vested Service | Benefit Reduction |
| 60 | 20 or more years | Unreduced Benefit | 60 | 25 or more years | Unreduced Benefit |
| 62 | 10 or more years | Unreduced Benefit | 62 | 20 or more years | Unreduced Benefit |
| 55 to 60 | 20 or more years | 1/2% reduction per month from age 55 to 59; and 1/4% reduction per month from age 59 to 60 | 55 to 60 | 25 or more years | 1/2% reduction per month from age 55 to 60 |
| 55 to 62 | Less than 20 years | 1/2% reduction per month from age 55 to 62 | 55 to 62 | 20 but less than 25 years | 1/2% reduction per month from age 55 to 62 |
| | | | 55 to 65 | Less than 20 years | 1/2% reduction per month from age 55 to 65 |

If you have engaged in disqualified employment that has not been "cured" then your early retirement benefit may be reduced further. The Pension Plan Document or the Summary Plan Description (available from the Fund Office) describes disqualified employment, how disqualified employment is cured, and the early retirement reduction associated with disqualified employment.

If you choose to defer payment of your pension to your normal retirement date no early payment reduction to the monthly benefit will apply because your pension is not beginning early.

You also may choose to defer your benefit beyond your normal retirement date. If you do and you entered the NRIPP before 2004, your monthly pension will be the greater of your earned pension on your late retirement date or your earned pension on your normal retirement date increased for each month that your pension payments are deferred. The late retirement adjustment factor will be 1.00 plus the following addition:

| For each month between ages | Addition |
|---|---|
| 65 to 66 | 0.010 |
| 66 to 67 | 0.011 |
| 67 to 68 | 0.013 |
| 68 to 69 | 0.015 |
| 69 to 70 | 0.017 |

If you entered the NRIPP after 2003, your monthly pension will be the greater of your earned pension on your late retirement date or your earned pension on your normal retirement date increased at a rate of 6.00% per year from your normal retirement date to your late retirement date.


Pg 4 of 6

If you choose to defer payment of Plan benefits beyond your normal retirement date, be aware that you will be required to begin payments no later than April 1st of the calendar year following the calendar year in which you attain age 70-1/2 if you are no longer working.

If you die after beginning pension payments, additional payments may be made to your spouse, depending on the method of payment in effect. However, if you choose to defer your payments and you die before beginning pension payments, a reduced benefit will be paid to your spouse (if you are married). For further information, you should review the applicable sections in your Pension Plan Document or the Summary Plan Description.

You should consider carefully the method of payment for your Plan benefits. After benefit payments begin you cannot elect to change the payment option, even if your personal circumstances change.

...annuity and lump sum:

| Annuity Amount | Single Life Annuity | Life Annuity with 5 Years Certain | Life Annuity with 10 Years Certain | 50% Joint & Survivor Annuity | 62% Joint & Survivor Annuity | 62% Joint & Survivor Annuity | 50% Joint & Survivor Pop-Up Annuity | 75% Joint & Survivor Pop-Up Annuity | 100% Joint & Survivor Pop-Up Annuity |
|---|---|---|---|---|---|---|---|---|---|
| | $1,359.66 | $1,291.54 | $1,141.43 | $920.76 | $854.55 | $854.55 | N/A | N/A | N/A |

**If participant elected ASD annuity:**

Plus adjusted RASD lump sum determined by missed payments / Plus lump sum value of missed payments and interest as of actual payment date

| Actual Payment Date | Value of missed Single Life Annuity payments | Value of missed Life Annuity with 5 Years Certain payments | Value of missed Life Annuity with 10 Years Certain payments | Value of missed 50% Joint & Survivor Annuity payments | Value of missed 62% Joint & Survivor Annuity payments | Value of missed 62% Joint & Survivor Annuity payments | Value of missed 50% Joint & Survivor Pop-Up Annuity payments | Value of missed 75% Joint & Survivor Pop-Up Annuity payments | Value of missed 100% Joint & Survivor Pop-Up Annuity payments |
|---|---|---|---|---|---|---|---|---|---|
| 2/1/2013 | $5,505.15 | $5,229.33 | $4,621.55 | $3,788.08 | $3,460.00 | $3,460.00 | N/A | N/A | N/A |
| 3/1/2013 | $6,898.22 | $6,552.61 | $5,791.03 | $4,671.47 | $4,335.55 | $4,335.55 | N/A | N/A | N/A |
| 4/1/2013 | $8,296.08 | $7,882.33 | $6,966.20 | $5,791.03 | $5,215.36 | $5,215.36 | N/A | N/A | N/A |
| 5/1/2013 | $9,697.25 | $9,218.52 | $8,147.09 | $6,966.20 | $6,098.46 | $6,098.46 | N/A | N/A | N/A |
| 6/1/2013 | $11,118.27 | $10,561.22 | $9,333.73 | $8,147.09 | $6,987.66 | $6,987.66 | N/A | N/A | N/A |
| 7/1/2013 | $12,538.67 | $11,910.45 | $10,526.15 | $9,333.73 | $7,880.58 | $7,880.58 | N/A | N/A | N/A |
| 8/1/2013 | $13,965.98 | $13,266.25 | $11,724.37 | $10,429.01 | $8,777.65 | $8,777.65 | N/A | N/A | N/A |
| 9/1/2013 | $15,400.24 | $14,628.25 | $12,928.42 | $11,405.02 | $9,679.09 | $9,679.09 | N/A | N/A | N/A |
| 10/1/2013 | $16,841.48 | $15,997.65 | $14,138.34 | $12,385.78 | $10,584.91 | $10,584.91 | N/A | N/A | N/A |
| 11/1/2013 | $18,289.73 | $17,373.38 | $15,354.15 | $13,371.31 | $11,495.14 | $11,495.14 | N/A | N/A | N/A |
| 12/1/2013 | $19,745.03 | $18,755.77 | $16,575.87 | $14,361.64 | $12,409.80 | $12,409.80 | N/A | N/A | N/A |
| 1/1/2014 | $21,207.42 | $20,144.89 | $17,803.54 | $15,356.79 | $13,328.91 | $13,328.91 | N/A | N/A | N/A |
| 2/1/2014 | $22,676.93 | $21,540.77 | $19,037.19 | $15,356.79 | $14,252.50 | $14,252.50 | N/A | N/A | N/A |
| **Annuity Amount** | $1,420.12 | $1,346.10 | $1,186.45 | $957.07 | $888.25 | $888.25 | N/A | N/A | N/A |

Plus lump sum value of missed payments and interest as of actual payment date

| Actual Payment Date | 50% Joint & Survivor Annuity | 62% Joint & Survivor Annuity | 62% Joint & Survivor Annuity |
|---|---|---|---|
| 2/1/2013 | $0.00 | $0.00 | $0.00 |
| 3/1/2013 | $991.73 | $892.57 | $892.57 |
| 4/1/2013 | $1,928.14 | $1,789.49 | $1,789.49 |
| 5/1/2013 | $2,898.25 | $2,690.77 | $2,690.77 |
| 6/1/2013 | $3,875.09 | $3,586.44 | $3,586.44 |
| 7/1/2013 | $4,855.68 | $4,506.52 | $4,506.52 |
| 8/1/2013 | $5,841.04 | $5,421.03 | $5,421.03 |
| 9/1/2013 | $6,831.20 | $6,339.99 | $6,339.99 |
| 10/1/2013 | $7,826.18 | $7,263.42 | $7,263.42 |
| 11/1/2013 | $8,826.00 | $8,191.35 | $8,191.35 |
| 12/1/2013 | $9,830.69 | $9,123.80 | $9,123.80 |
| 1/1/2014 | $10,840.27 | $10,060.78 | $10,060.78 |
| 2/1/2014 | $11,854.76 | $11,002.32 | $11,002.32 |

Houston Texas

Dear Ms Evertson:

I'm writing in regards to your mailing of 1/3/12 - "Retirement Benefits Election Statement for Non Married Participants"

My purpose in writing is to initiate both a complaint and an appeal

Some of the Reasons follow:

1) Lump Sum Distribution and Roll-over options to an IRA aren't included.

   Losing the IRA option means a tremendous and unnecessary increase in taxes.

2) I turned 70 1/19/13 that leaves me only 6 months before I have to start Paying taxes on a portion of the Pension.

   THE TIME LINE here is critical.

3) Essentially you've decided to keep my money and give me an allowance while using my Retirement funds for your purposes.

1 of 3

P.13
Claim

4) I dont believe your stated RASS is correct. It should be when I turned 65.

P.13
Claim

5) The annuity starting date is incorrect. Your mailing of 1/31/13 didnt reach me for a week.

i) Beneficiaries — Someone changed them. There are two listed on my application. My son michal and daughter, leslie

This hasn't changed. No one has power of attorney over me. There isn't any kind of custodial/caretaker authority over me either.

I make my decisions — no one else. That includes my pension decisions.

7) I requested, verbally and in writing, information on contributions from 1995 - 2002

I spoke to one of the people in your office about this giving my reasons.

Once again my reasoning is that everything I owned was stolen on July 7, 2005. Police reports were filed so there is a record.

I managed to get some of my
2 of 3

Records back but not all of them.

P. 13
Claim
8) I really don't know if your calculated pension benefit amount is correct. I really don't think so.

The pension contribution reports for 1996, 1998, 2001 and 2002 are missing.

Their is no "total contribution" figure I can back in to.

In addition my social security benefit is too low.

I need comparative figures. Documents. The pension contribution reports might be used as a basis for calculating comparative $ figures with the SSA Records.

I still need that information.

Sincerely

Robert Bonczek
PO Box 18782
Mpls Mn 55418

cc: Board of Trustees

3 of 3

Houston Texas 77272-1680

5/8/13

Dear Sir:

(Exhibit C
Claim)

On 2/14/13 I initiated a complaint and appeal Regarding my Pension. Specifically I was concerned about an SRA (rollover) provision and the Retroactive annuity Starting date.

Since that time I found an IRS Publication that stipulates a non-contributory plan wasn't eligible for an SRA Rollover.

My mistake. Appeal is cancelled

That leaves the Retroactive annuity starting date provision. Page 27 #(28 of the Summary Plan Description is the Provision I'm Referring to

I believe one of your fund office pamphlets (quarterly/periodic updates) states that the Retroactive provision went back to age 65 (in my case). So this is still a question mark

The NRIPP Retirement Elections Statement shows 10/1/12 as my Retroactive Annuity Starting Date. That's a huge $ difference

I think the IRS Regs support my position as well.

Brezak

At any rate the Fund Office provided
me with a great deal of information
on earnings. I'd like to thank them
for their efforts on my behalf.

I'll be sending in the required forms
next week. The only open questions or
provisions would be the retroactive
starting date and the financial impact.

} Exhibit C

} Claim

I thank you

Robert Brezak

Robert Brezak
P.O. Box 18782
Mpls Mn 55418

(612) 508-6258

5/10/13

TRIPP
Houston, Texas 77272-1680

EXHIBIT C3

Dear Sir

On 5/3/13 I faxed you regarding my pension. Today I'd like to amend that fax. Sorry if this causes you any inconvenience but it's an important issue.

Once again I'm concerned about the Retroactive annuity starting date provision. I'm right on this point.    Claim Ex C #1 & 2

To add weight to my argument your "Notice of Benefit Suspension" mailings supports my position. You suspended my participation in the program on my 65th birthday putting me on the shelf.

You've had the accrued interest and investment growth on my pension for 5 years.

It follows that my Retroactive annuity starting date is 1/19/08. Your mailings state Retroactive payments with interest are available to the pensioner. My payments should start @ 1/19/08 per your literature.

So given this info I guess I'll have to hold onto the forms I was going to send in until I hear from you. I hope that will be soon.

1g.

Again I'm sorry for being a thorn
in your side but what Right is Right.
and I'm Right on this.

Sincerely

Robert Dnzjek

Robert Dnzjek
Po Box 18782
Mpls Mn 55418

(612) 508-6258

Encl: (1) 5/15/10, "Notice of Benefit Suspension"
Example

Pg V

EXHIBIT I
CONDITIONAL
SCH. OF BENEFITS

Comparative Schedule of
Pension Benefits Earned
Exhibit D

| Source | Monthly Benefit | Retroactive Benefit |
|---|---|---|
| **Zenith/Board** | | |
| Exhibit C: 1/31/13 Benefit Election Statement | | |
|     Option 1 | $1,420.00 | Ø |
|     Option 2 | 1,359.66 | |
|       One-time Retroactive Benefit | | $ 5,505.15 |
| Exhibit E 7/3/14 | | |
|     Wilson-McShane letter | 1,611.49 | Ø |
| **Retiree Calculation** – per SPD (pgs 23–31) | | |
|     Three Calculations (Schedules attached) | | |
| Sch.A--Normal Retirement (pgs 23-24 SPD) | 845.20 | |
|     Retroactive Benefit $845.20 x 80 months (1/19/08 - 9/30/14) | | 67,616.00 |
| Sch B- Late Retirement - 1st Calculation (pgs 29-30) | 860.08 | |
|     Retroactive Benefit $860.08 x 80 mos | | 68,806.40 |
| Sch C- Late Retirement - 2nd Calculation (pgs 30-31 SPD) | 1,344.97 | |
|     Retroactive Benefit 1,344.97 x 80 | | 107,597.60 |
| Page 31, SPD states - "The retiree receives the larger amount"= | $1,344.97 | 107,597.60 |

Normal Retirement
Benefit Calculation
Schedule A

Format SPD Pg 24

STEP ONE – Base Plan Pension

    a. Ref: Schedule D-2 attached
       2.00 x $3^4/5$ years of credited service =  7.60
       3.00 x $10^1/5$ years of credited service = 30.60

       Totals 14 yrs                 $38.20

    b. Adjusted by pre-2004 increase factor
       at age 65 from SPD Table 5, Appendix
       B = (38.20 x 1.0282 = 39.28)        $ 39.29

---

STEP TWO – Incremental Plan Pension earned
      to 1/1/2004

    a. Ref: Schedule D-1 attached
       Total benefit contributions prior to
       1/1/04 =

       $15,733 x 1.15 x 100% = $18,093

    b. Benefits earned prior to 1/1/04 using
       Schedule D-1 attached.        $783.82

    c. Adjusted by pre-2004 increase factor
       at age 65 from SPD Table 5, Appendix
       B (783.82 x 1.0282 = 805.92)       805.92

TOTAL BENEFIT                     $845.20

Late Retirement
Benefit Calculation
Schedule B

FIRST CALCULATION

(Format SPD Page 28)

STEP ONE – Base Plan Pension

     a.  Ref: Schedule D-2 attached
         2.00 x 3 4/5 yrs of credited service     $ 7.60
         3.00 x 10 1/5 yrs of credited service    <u>30.60</u>

         Totals 14 yrs                   $38.20

     b.  Adjusted by pre-2004 increase factor
         at age 69 from SPD Table 5., Appendix
         B = $38.20 x 1.0463 = $39.97)              $ 39.97


STEP TWO – Incremental Plan Pension earned prior
           to 01/01/04

     a.  Ref: Schedule D-1 attached
         Total Benefit Contributions prior to
         01/01/04 = $15,733 x 1.15 x 100% =
         18,093

     b.  Ref: Schedule D-1 attached
         Benefits earned prior to 01/01/04
         per Schedule D-1                783.82

     c.  Adjusted by pre-2004 increase factor
         at age 69 from SPD Table 5, Appendix
         B = 783.82 x 1.0463 =           <u>820.11</u>

TOTAL BENEFIT                         <u>$860.08</u>.

Late Retirement
Benefit Calculation
Schedule C

SECOND CALCULATION

(Format pgs 29-31 SPD)

STEP ONE - Base Plan Pension

    a/b    Same as the calculation in step one
            Schedule B                            $ 39.97

STEP TWO - Incremental Plan Pension

    a/b    Same as the calculation in step one
            Schedule B                $783.82

    c      Adjusted by pre-2004 increase factor
           at age 65 from Table 5, Appendix B,
           SPD = 783,82 x 1.0282 =         805.92

TOTAL                                      $845.89

STEP THREE

    a.     Multiply each of the monthly retirement
           factors in Table 4, Appendix B, SPD
           after age 65 by the number of months
           between your normal retirement age and
           the date you retire.  Add the results.

           Factor for age 65 (2008)          1.0000
           Factor for 65 to 66 (2009) .010 x 12   .1200
           Factor for 66 to 67 (2010) .011 x 12   .1320
           Factor for 67 to 68 (2011) .013 x 12   .1560
           Factor for 68 to 69 (2012) .015 x 12   .1800

           Total of factors at age 69 =        1.5900

    b.     Multiply your normal retirement benefit
           by your total late retirement factor

           $845.89 x 1.590 =                $1,344.97

Common Data Base
Pension Benefits Earned
(Using Appendix A)
Schedule D-1

STEP 2b (all calculations)
Source SPD - pg 24 Normal Retirement (Schedule A)
        pg 29 Late Retirement - 1st Calculation (Schedule B)
        pg 30 Late Retirement - 2nd Calculation (Schedule C)

| Time Period | Contri- butions | x Factor = | Adj. Total | x | Appendix A % | = | Adjusted Total |
|---|---|---|---|---|---|---|---|
| 1979 - 1980 | $ 349 | x 1.15 | $ 402 | x | 2.50% | = | 10.03 |
| 1981 - 1983 | 1454 | 1.15 | 1692 | x | 3.00 | = | 50.16 |
| 1984 | 522 | 1.15 | 600 | | 3.25 | | 19.50 |
| 1985 - 1986 | 1212 | 1.15 | 1394 | | 4.30 | | 59.94 |
| 1/87 - 12/91 | 849 | 1.15 | 976 | | 4.50 | | 43.94 |
| 1/92 - 12/96 | 2435 | 1.15 | 2800 | | 4.60 | | 128.80 |
| 1/97 - 12/99 | 1499 | 1.15 | 1724 | | 4.60 | | 79.30 |
| 1/00 - 12/02 | 7413 | 1.15 | 8525 | | 4.60 | | 392.15 |
| TOTALS | $15,733 | | 18,093 | | | | $783.82 |

(Step Two a/b all calculations)

Common Data Base
Pension Benefits Earned
Schedule D-2

| Inclusive Dates | | Years of Credit Earned | | App. A Plan | |
|---|---|---|---|---|---|
| From | To | Each Yr. | Cum. Yrs | Base $ | Incremental % |
| 7/73 | 12/80 | $2/5$ | | $2.00 | 2.50% |
| 1/81 | 12/83 | $2^2/5$ | $3^4/5$ | 2.00 | 3.00 |
| 1/84 | 12/84 | 1 | | 2.00 | 3.25 |
| 1/85 | 12/86 | 2 | | 3.00 | 4.30 |
| 1/87 | 12/91 | $1^1/5$ | | 3.00 | 4.50 |
| 1/92 | 12/96 | $3^1/5$ | $10^1/5$ | 3.00 | 4.60 |
| 1/97 | 12/02 | $3^4/5$ | | 3.00 | 4.60 |

TOTAL (Step One a all calc.)  __14 yrs__

NRIPP Work
Report Summary
01/1979 – 03/2013
Schedule D-2

| Year | Amount | Credit Yr. | Cum. | Year | Amount | Credit Yr. | Cum |
|---|---|---|---|---|---|---|---|
| 1979 | $ 59.85 | 0 | | 1993 | $ 483.13 | 3/5 | |
| 80 | 289.02 | 2/5 | | 94 | 973.67 | 1 | |
| 81 | 497.79 | 1 | | 95 | 148.10 | 3/5 | |
| 82 | 552.81 | 1 | $3^4/5$ | 96 | 8.10 | ∅ | |
| 83 | 403.64 | 2/5 | | 97 | 338.13 | 1/5 | 6 |
| 84 | 521.97 | 1 | | 98 | 347.66 | 1/5 | |
| 85 | 548.07 | 1 | | 99 | 813.10 | 4/5 | |
| 86 | 664.40 | 1 | | 2000 | 2652.35 | 1 | |
| 90 | 192.93 | 1/5 | $4^1/5$ | 01 | 2544.60 | 4/5 | |
| 91 | 655.66 | 1 | | 02 | 2216.52 | 4/5 | |
| 92 | 821.95 | 1 | | | | | |
| Sub-totals | 5,208.09 | 8 | 8 | | 10525.36 | 6 | 6 |
| Total | | | | | 15733.45 | | 14 |
| | | | | | (1) | | (2) |

(1) $ taken from the NRIPP Schedule attzched.
(2) Hours/years of vested (credited) service taken from
    Schedules 1 & 2 page 13, SPD.

NATIONAL ROOFING INDUSTRY
PENSION FUND
PO BOX 721680
HOUSTON, TX 77272

SSN XXX-XX-

COPY

BONCZEK, ROBERT L
PO BOX 18782
MINNEAPOLIS, MN 55418-0782

## STATEMENT OF WORK REPORTS RECEIVED FROM JAN 1979 THRU MAR 2013

| WORK MONTH | EMPLOYER NAME | NRIPP UNITS | NRIPP AMOUNT | UNITS | AMOUNT |
|---|---|---|---|---|---|
| | GRAND TOTAL | 17,784.55 | 15,733.45 | .00 | |

NATIONAL ROOFING INDUSTRY
PENSION FUND
PO BOX 721680
HOUSTON, TX 77272

COPY

SSN XXX-XX-

BONCZEK, ROBERT L
PO BOX 18782
MINNEAPOLIS, MN 55418-0782

## STATEMENT OF WORK REPORTS RECEIVED FROM JAN 1979 THRU MAR 2013

| WORK MONTH | EMPLOYER NAME | NRIPP UNITS | NRIPP AMOUNT | UNITS | AMOUNT |
|---|---|---|---|---|---|
| 12/2002 | DALCO ROOFING INC | | | | |
| 12/2002 | DALCO ROOFING INC | 97.00 | 232.80 | | |
| 11/2002 | DALCO ROOFING INC | 8.00 | 19.20 | | |
| 11/2002 | DALCO ROOFING INC | 29.50 | 70.80 | | |
| 10/2002 | CENTRAL ROOFING CO | 96.00 | 230.40 | | |
| 09/2002 | CENTRAL ROOFING CO | 106.00 | 254.40 | | |
| 05/2002 | SNYDER RFG OF WASHINGTON LLC | 50.50 | 121.20 | | |
| 04/2002 | SNYDER RFG OF WASHINGTON LLC | 50.50 | 147.46 | | |
| 04/2002 | CUSTOM ROOFING | 39.00 | 113.88 | | |
| 03/2002 | CUSTOM ROOFING | 32.00 | 93.44 | | |
| 03/2002 | PACIFIC RAINIER ROOFING INC | 29.50 | 86.14 | | |
| 02/2002 | PACIFIC RAINIER ROOFING INC | 54.00 | 157.68 | | |
| 01/2002 | PACIFIC RAINIER ROOFING INC | 107.00 | 312.44 | | |
| | | 129.00 | 376.68 | | |
| | TOTAL FOR 2002 | 828.00 | 2,216.52 | | |
| 10/2001 | QUEEN CITY RFG & SHT MTL | | | | |
| 09/2001 | QUEEN CITY RFG & SHT MTL | 95.00 | 277.40 | | |
| 08/2001 | QUEEN CITY RFG & SHT MTL | 142.00 | 369.20 | | |
| 07/2001 | MEYER BROS ROOFING INC | 56.50 | 146.90 | | |
| 06/2001 | MEYER BROS ROOFING INC | 90.50 | 235.30 | | |
| 05/2001 | MEYER BROS ROOFING INC | 163.00 | 423.80 | | |
| 04/2001 | MEYER BROS ROOFING INC | 144.00 | 374.40 | | |
| 02/2001 | HAIGHT ROOFING COMPANY IN | 114.50 | 297.70 | | |
| 01/2001 | HAIGHT ROOFING COMPANY IN | 45.00 | 117.00 | | |
| | | 116.50 | 302.90 | | |
| | TOTAL FOR 2001 | 967.00 | 2,544.60 | | |

* WHILE THE ADMINISTRATOR OF THE TRUST HAS BEEN INSTRUCTED TO USE EVERY EFFORT TO MAKE
THE FOREGOING INFORMATION ACCURATE, THE TRUSTEES EXPRESSLY RESERVE THE RIGHT TO
CORRECT THE STATEMENT IF ERRORS ARE DISCOVERED.  NO LIABILITY IS ASSUMED FOR ANY SUCH
ERRORS. YOUR BENEFITS WILL DEPEND UPON THE CONTENTS OF THE OFFICIAL TRUST RECORDS
RATHER THAN THIS SUMMARY, AND UPON THE FACTS VERIFIED BEFORE BENEFITS ARE PAID.

NATIONAL ROOFING INDUSTRY
PENSION FUND
PO BOX 721680
HOUSTON, TX 77272

SSN XXX-XX-

COPY

BONCZEK, ROBERT L
PO BOX 18782
MINNEAPOLIS, MN 55418-0782

## STATEMENT OF WORK REPORTS RECEIVED FROM JAN 1979 THRU MAR 2013

| WORK MONTH | EMPLOYER NAME | NRIPP UNITS | NRIPP AMOUNT | UNITS | AMOUNT |
|---|---|---|---|---|---|
| 12/2000 | HAIGHT ROOFING COMPANY IN | 141.50 | 367.90 | | |
| 11/2000 | HAIGHT ROOFING COMPANY IN | 171.50 | 445.90 | | |
| 10/2000 | HAIGHT ROOFING COMPANY IN | 172.00 | 447.20 | | |
| 09/2000 | CROW RFG & SHEET METAL INC | 41.50 | 107.90 | | |
| 09/2000 | HAIGHT ROOFING COMPANY IN | 144.00 | 374.40 | | |
| 08/2000 | CROW RFG & SHEET METAL INC | 131.00 | 340.60 | | |
| 07/2000 | CROW RFG & SHEET METAL INC | 112.00 | 291.20 | | |
| 06/2000 | CROW RFG & SHEET METAL INC | 62.00 | 130.20 | | |
| 06/2000 | CROW RFG & SHEET METAL INC | 19.00 | 49.40 | | |
| 05/2000 | CROW RFG & SHEET METAL INC | 23.50 | 49.35 | | |
| 01/2000 | PACIFIC RAINIER ROOFING INC | 23.00 | 48.30 | | |
| | TOTAL FOR 2000 | 1,041.00 | 2,652.35 | | |
| 12/1999 | PACIFIC RAINIER ROOFING INC | 92.50 | 194.25 | | |
| 11/1999 | PACIFIC RAINIER ROOFING INC | 37.50 | 78.75 | | |
| 10/1999 | PACIFIC RAINIER ROOFING INC | 129.50 | 271.95 | | |
| 09/1999 | PACIFIC RAINIER ROOFING INC | 78.50 | 164.85 | | |
| 09/1999 | SNYDER RFG OF OREGON LLC | 14.00 | 14.00 | | |
| 08/1999 | SNYDER RFG OF OREGON LLC | 56.00 | 2.80- | | |
| 08/1999 | SNYDER RFG OF OREGON LLC | 41.88 | 41.88 | | |
| 08/1999 | SNYDER RFG OF OREGON LLC | 167.50 | 8.38- | | |
| 08/1999 | SNYDER RFG OF OREGON LLC | 41.88- | 41.88- | | |
| 08/1999 | SNYDER RFG OF OREGON LLC | 167.50- | 8.38 | | |
| 08/1999 | SNYDER RFG OF OREGON LLC | 41.88 | 41.88 | | |
| 07/1999 | SNYDER RFG OF OREGON LLC | 167.50 | 8.38- | | |
| 07/1999 | SNYDER RFG OF OREGON LLC | 58.25 | 58.25 | | |
| 06/1999 | SNYDER RFG OF OREGON LLC | 233.00 | 11.65- | | |
| 06/1999 | SNYDER RFG OF OREGON LLC | 15.00 | 15.00 | | |
| | SNYDER RFG OF OREGON LLC | 60.00 | 3.00- | | |

WHILE THE ADMINISTRATOR OF THE TRUST HAS BEEN INSTRUCTED TO USE EVERY EFFORT TO MAKE THE FOREGOING INFORMATION ACCURATE, THE TRUSTEES EXPRESSLY RESERVE THE RIGHT TO CORRECT THE STATEMENT IF ERRORS ARE DISCOVERED. NO LIABILITY IS ASSUMED FOR ANY SUCH ERRORS. YOUR BENEFITS WILL DEPEND UPON THE CONTENTS OF THE OFFICIAL TRUST RECORDS RATHER THAN THIS SUMMARY, AND UPON THE FACTS VERIFIED BEFORE BENEFITS ARE PAID.

NATIONAL ROOFING INDUSTRY
PENSION FUND
PO BOX 721680
HOUSTON, TX 77272

 COPY

SSN XXX-XX-

BONCZEK, ROBERT L
PO BOX 18782
MINNEAPOLIS, MN 55418-0782

## STATEMENT OF WORK REPORTS RECEIVED FROM JAN 1979 THRU MAR 2013

| WORK MONTH | EMPLOYER NAME | NRIPP UNITS | NRIPP AMOUNT | UNITS | AMOUNT |
|---|---|---|---|---|---|
| | TOTAL FOR 1999 | 983.63 | 813.10 | | |
| 04/1998 | CEDAR ROOFING INC | 16.00 | 13.60 | | |
| 04/1998 | DEAN ROOFING | 57.50 | 48.88 | | |
| 03/1998 | COMMERCIAL ROOFERS INC | 114.00 | 96.90 | | |
| 02/1998 | COMMERCIAL ROOFERS INC | 112.00 | 95.20 | | |
| 01/1998 | COMMERCIAL ROOFERS INC | 109.50 | 93.08 | | |
| | TOTAL FOR 1998 | 409.00 | 347.66 | | |
| 12/1997 | COMMERCIAL ROOFERS INC | 128.00 | 108.80 | | |
| 11/1997 | COMMERCIAL ROOFERS INC | 70.50 | 59.93 | | |
| 01/1997 | ISLAND ROOF SYSTEMS/UTAH | 121.00 | 169.40 | | |
| | TOTAL FOR 1997 | 319.50 | 338.13 | | |
| 01/1996 | GRIFFITH ROOFING | 40.50 | 8.10 | | |
| | TOTAL FOR 1996 | 40.50 | 8.10 | | |
| 12/1995 | GRIFFITH ROOFING | 106.50 | 21.30 | | |
| 11/1995 | ABC ROOFING INC | 4.00 | .80 | | |
| 11/1995 | GRIFFITH ROOFING | 65.00 | 13.00 | | |
| 10/1995 | ABC ROOFING INC | 117.00 | 23.40 | | |

* WHILE THE ADMINISTRATOR OF THE TRUST HAS BEEN INSTRUCTED TO USE EVERY EFFORT TO MAKE
THE FOREGOING INFORMATION ACCURATE, THE TRUSTEES EXPRESSLY RESERVE THE RIGHT TO
CORRECT THE STATEMENT IF ERRORS ARE DISCOVERED.  NO LIABILITY IS ASSUMED FOR ANY SUCH
ERRORS. YOUR BENEFITS WILL DEPEND UPON THE CONTENTS OF THE OFFICIAL TRUST RECORDS
RATHER THAN THIS SUMMARY, AND UPON THE FACTS VERIFIED BEFORE BENEFITS ARE PAID.



NATIONAL ROOFING INDUSTRY
PENSION FUND
PO BOX 721680
HOUSTON, TX 77272



SSN XXX-XX-

BONCZEK, ROBERT L
PO BOX 18782
MINNEAPOLIS, MN 55418-0782

### STATEMENT OF WORK REPORTS RECEIVED FROM JAN 1979 THRU MAR 2013

| WORK MONTH | EMPLOYER NAME | NRIPP UNITS | NRIPP AMOUNT | UNITS | AMOUNT |
|---|---|---|---|---|---|
| 09/1995 | SCHMAUTZ CONSTRUCTION CO | 141.00 | 28.20 | | |
| 08/1995 | SCHMAUTZ CONSTRUCTION CO | 150.50 | 30.10 | | |
| 07/1995 | SCHMAUTZ CONSTRUCTION CO | 156.50 | 31.30 | | |
| | TOTAL FOR 1995 | 740.50 | 148.10 | | |
| 12/1994 | G & S ROOFING INC | 98.00 | 93.10 | | |
| 11/1994 | G & S ROOFING INC | 138.00 | 131.10 | | |
| 10/1994 | G & S ROOFING INC | 8.00 | 7.60 | | |
| 10/1994 | M & S ROOFING | 81.75 | 77.66 | | |
| 09/1994 | JOHN A DALSIN & SON INC | 34.75 | 33.01 | | |
| 09/1994 | M & S ROOFING | 105.75 | 100.46 | | |
| 08/1994 | JOHN A DALSIN & SON INC | 170.75 | 162.21 | | |
| 07/1994 | JOHN A DALSIN & SON INC | 111.50 | 105.93 | | |
| 06/1994 | JOHN A DALSIN & SON INC | 149.75 | 142.26 | | |
| 05/1994 | JOHN A DALSIN & SON INC | 123.25 | 117.09 | | |
| 04/1994 | JOHN A DALSIN & SON INC | 5.00 | 3.25 | | |
| | TOTAL FOR 1994 | 1,026.50 | 973.67 | | |
| 12/1993 | JOHN A DALSIN & SON INC | 19.75 | 12.84 | | |
| 11/1993 | JOHN A DALSIN & SON INC | 126.25 | 82.06 | | |
| 10/1993 | JOHN A DALSIN & SON INC | 149.50 | 97.18 | | |
| 09/1993 | JOHN A DALSIN & SON INC | 97.25 | 63.21 | | |
| 08/1993 | PETERSON BROS RFG & CONSTR CO | 108.50 | 70.53 | | |
| 07/1993 | PETERSON BROS RFG & CONSTR CO | 198.50 | 129.03 | | |
| 06/1993 | PETERSON BROS RFG & CONSTR CO | 34.00 | 22.10 | | |

* WHILE THE ADMINISTRATOR OF THE TRUST HAS BEEN INSTRUCTED TO USE EVERY EFFORT TO MAKE THE FOREGOING INFORMATION ACCURATE, THE TRUSTEES EXPRESSLY RESERVE THE RIGHT TO CORRECT THE STATEMENT IF ERRORS ARE DISCOVERED. NO LIABILITY IS ASSUMED FOR ANY SUCH ERRORS. YOUR BENEFITS WILL DEPEND UPON THE CONTENTS OF THE OFFICIAL TRUST RECORDS RATHER THAN THIS SUMMARY, AND UPON THE FACTS VERIFIED BEFORE BENEFITS ARE PAID. *

NATIONAL ROOFING INDUSTRY
PENSION FUND
PO BOX 721680
HOUSTON, TX 77272

COPY

SSN XXX-XX-

BONCZEK, ROBERT L
PO BOX 18782
MINNEAPOLIS, MN 55418-0782

## STATEMENT OF WORK REPORTS RECEIVED FROM JAN 1979 THRU MAR 2013

| WORK MONTH | EMPLOYER NAME | NRIPP UNITS | NRIPP AMOUNT | UNITS | AMOUNT |
|---|---|---|---|---|---|
| 01/1993 | BENCHMARK ROOFING CORP | 9.50 | 6.18 | | |
| | TOTAL FOR 1993 | 743.25 | 483.13 | | |
| 12/1992 | BENCHMARK ROOFING CORP | 65.50 | 42.58 | | |
| 11/1992 | BENCHMARK ROOFING CORP | 125.00 | 81.25 | | |
| 10/1992 | BENCHMARK ROOFING CORP | 186.00 | 120.90 | | |
| 09/1992 | BENCHMARK ROOFING CORP | 109.50 | 71.18 | | |
| 08/1992 | DALBEC ROOFING INC | 136.50 | 88.73 | | |
| 07/1992 | DALBEC ROOFING INC | 139.50 | 90.68 | | |
| 06/1992 | DALBEC ROOFING INC | 110.00 | 71.50 | | |
| 05/1992 | DALBEC ROOFING INC | 86.50 | 56.23 | | |
| 05/1992 | WALKER RFG CO | 97.25 | 63.21 | | |
| 04/1992 | WALKER RFG CO | 105.25 | 68.41 | | |
| 02/1992 | WALKER RFG CO | 66.00 | 42.90 | | |
| 01/1992 | WALKER RFG CO | 37.50 | 24.38 | | |
| | TOTAL FOR 1992 | 1,264.50 | 821.95 | | |
| 12/1991 | WALKER RFG CO | 44.25 | 28.76 | | |
| 11/1991 | WALKER RFG CO | 70.00 | 45.50 | | |
| 10/1991 | WALKER RFG CO | 115.50 | 75.08 | | |
| 09/1991 | WALKER RFG CO | 106.50 | 69.23 | | |
| 08/1991 | WALKER RFG CO | 168.25 | 109.36 | | |
| 07/1991 | WALKER RFG CO | 147.75 | 96.04 | | |
| 06/1991 | WALKER RFG CO | 151.00 | 98.15 | | |
| 05/1991 | WALKER RFG CO | 99.50 | 64.68 | | |

* WHILE THE ADMINISTRATOR OF THE TRUST HAS BEEN INSTRUCTED TO USE EVERY EFFORT TO MAKE THE FOREGOING INFORMATION ACCURATE, THE TRUSTEES EXPRESSLY RESERVE THE RIGHT TO CORRECT THE STATEMENT IF ERRORS ARE DISCOVERED.  NO LIABILITY IS ASSUMED FOR ANY SUCH ERRORS.  YOUR BENEFITS WILL DEPEND UPON THE CONTENTS OF THE OFFICIAL TRUST RECORDS RATHER THAN THIS SUMMARY, AND UPON THE FACTS VERIFIED BEFORE BENEFITS ARE PAID. *

NATIONAL ROOFING INDUSTRY
PENSION FUND
PO BOX 721680
HOUSTON, TX 77272



SSN XXX-XX-


BONCZEK, ROBERT L
PO BOX 18782
MINNEAPOLIS, MN 55418-0782


## STATEMENT OF WORK REPORTS RECEIVED FROM JAN 1979 THRU MAR 2013

| WORK MONTH | EMPLOYER NAME | NRIPP UNITS | NRIPP AMOUNT | UNITS | AMOUNT |
|---|---|---|---|---|---|
| 04/1991 | WALKER RFG CO | 100.50 | 45.23 | | |
| 03/1991 | WALKER RFG CO | 18.00 | 8.10 | | |
| 02/1991 | WALKER RFG CO | 22.75 | 10.24 | | |
| 01/1991 | WALKER RFG CO | 11.75 | 5.29 | | |
| TOTAL FOR 1991 | | 1,055.75 | 655.66 | | |
| 01/1990 | | | | | |
| 01/1990 | | .04 | .04 | | |
| | | 428.75 | 192.89 | | |
| TOTAL FOR 1990 | | 428.79 | 192.93 | | |
| 01/1986 | | | | | |
| 01/1986 | | .12 | .12 | | |
| | | 1,476.50 | 664.28 | | |
| TOTAL FOR 1986 | | 1,476.62 | 664.40 | | |
| 01/1985 | | | | | |
| 01/1985 | | .09 | .09 | | |
| | | 1,218.00 | 547.98 | | |
| TOTAL FOR 1985 | | 1,218.09 | 548.07 | | |
| 01/1984 | | | | | |
| 01/1984 | | .09 | .09 | | |
| | | 1,160.00 | 521.88 | | |

* WHILE THE ADMINISTRATOR OF THE TRUST HAS BEEN INSTRUCTED TO USE EVERY EFFORT TO MAKE
THE FOREGOING INFORMATION ACCURATE, THE TRUSTEES EXPRESSLY RESERVE THE RIGHT TO
CORRECT THE STATEMENT IF ERRORS ARE DISCOVERED.  NO LIABILITY IS ASSUMED FOR ANY SUCH
ERRORS. YOUR BENEFITS WILL DEPEND UPON THE CONTENTS OF THE OFFICIAL TRUST RECORDS
RATHER THAN THIS SUMMARY, AND UPON THE FACTS VERIFIED BEFORE BENEFITS ARE PAID.

NATIONAL ROOFING INDUSTRY
PENSION FUND
PO BOX 721680
HOUSTON, TX 77272



SSN XXX-XX-

BONCZEK, ROBERT L
PO BOX 18782
MINNEAPOLIS, MN 55418-0782

### STATEMENT OF WORK REPORTS RECEIVED FROM JAN 1979 THRU MAR 2013

| WORK MONTH | EMPLOYER NAME | NRIPP UNITS | NRIPP AMOUNT | UNITS | AMOUNT |
|---|---|---|---|---|---|
| TOTAL FOR 1984 | | 1,160.09 | 521.97 | | |
| 01/1983 | | .08 | .08 | | |
| 01/1983 | | 897.00 | 403.56 | | |
| TOTAL FOR 1983 | | 897.08 | 403.64 | | |
| 01/1982 | | .11 | .11 | | |
| 01/1982 | | 1,228.50 | 552.70 | | |
| TOTAL FOR 1982 | | 1,228.61 | 552.81 | | |
| 01/1981 | | .09 | .09 | | |
| 01/1981 | | 1,106.25 | 497.70 | | |
| TOTAL FOR 1981 | | 1,106.34 | 497.79 | | |
| 01/1980 | | .05 | .05 | | |
| 01/1980 | | 650.25 | 288.97 | | |
| TOTAL FOR 1980 | | 650.30 | 289.02 | | |
| 01/1979 | | 199.50 | 59.85 | | |
| TOTAL FOR 1979 | | 199.50 | 59.85 | | |

WHILE THE ADMINISTRATOR OF THE TRUST HAS BEEN INSTRUCTED TO USE EVERY EFFORT TO MAKE THE FOREGOING INFORMATION ACCURATE, THE TRUSTEES EXPRESSLY RESERVE THE RIGHT TO CORRECT THE STATEMENT IF ERRORS ARE DISCOVERED. NO LIABILITY IS ASSUMED FOR ANY SUCH ERRORS. YOUR BENEFITS WILL DEPEND UPON THE CONTENTS OF THE OFFICIAL TRUST RECORDS RATHER THAN THIS SUMMARY, AND UPON THE FACTS VERIFIED BEFORE BENEFITS ARE PAID.

**COPY**

## National Roofing Industry Pension Plan

*3001 Metro Drive – Suite 500*
*Bloomington, MN 55425*
*www.nripf.com*

*Wilson-McShane Corporation*
*Fund Administrators*

Telephone: (952) 854-0795
Fax: (952) 851-3514
Toll Free: (800) 595-7209

January 17, 2014

*EXHIBIT E*

Robert Bonczek
PO Box 18782
Minneapolis MN 55418

Dear Mr. Bonczek:

The National Roofing Industry Pension Plan's records indicate that you are approaching or have reached age 70 and have participated in the Fund at least 5 years without a loss of service.

A vested participant in the National Roofing Industry Pension Plan is eligible to retire at any time after the later of, his 65th birthday or fifth anniversary of participation, and to begin receiving a full Normal Retirement Benefit from the Plan. The Plan pays benefits to eligible participants who retire and apply for them.

If you are a 5% owner of a contributing employer, you are required to receive your benefits from the Plan no later than the April 1st of the calendar year following the year in which you reach age 70 ½, whether you have retired or not. If you are not a 5% owner, then your benefits must begin no later than the April 1st following the later of the calendar year in which you retire or the calendar year in which you reach age 70 ½. Please be advised the Internal Revenue Service can charge a significant excise tax of fifty (50) percent on payments that are not distributed after you reach your required beginning date.

Enclosed is an application for you to complete and return to this office at your earliest convenience. Along with the completed application, please submit a copy of your birth certificate, a copy of your spouse's birth certificate and marriage license, if applicable. When the requested information is received and reviewed, if you are due any pension benefits you will be notified of the effective date.

If you have any questions, please do not hesitate to contact the Fund Office.

Sincerely,

*Chris Reitmeier*

Chris Reitmeier
Wilson-McShane Corporation
Pension Specialist

Enclosure

cc:      LU #96

Dayton Hudson Corp.
Pension Dept.
(Fax) 952-851-3514

JUN 1 6 2014

COPY

EXHIBIT E

Bonczek

Chris!

I'm sending this fax in response to conversations I've had with David Marshall, D.O.L. E.B.S.A. I need some information with regards to my pension benefits.

First, there's the question of my eligibility date that was changed by Xerox Administrators from 2008 to 2012. They can't do this. My benefits were 100% vested. Changing my eligibility date reduces my benefits which aren't subject to change.

The plan chosen was a lifetime benefit plan. If you can somehow extend my natural lifetime by 5 years, you are an extraordinary talent. I don't think it can be done. I'll hang around if you're up to it.

There is no indication in your Summary Plan Description booklet that my life expectancy was based on an actuarial table in your calculations. If it was this would be a good time to stipulate this and also what age was used.

Considering that Smith reduced my benefit by 5 years and I'm 71 I may actually already be dead and forfeited my benefit according to them.

I don't think that's right.

When I spoke to you on the phone you mentioned that the benefit would have to be recalculated if the 2008 eligibility date "was used. I don't think that's right. The benefit should be the same.

Consequently I'd appreciate your sending me the worksheet calculations (in detail) that back up the summary information on monthly benefit.

In short the formula(s) used and specific information used in your calculations are necessary.

Finally, in the reading I've done it seems that the summary plan description provided is backed up by a document(s) known, or entitled, "The Plan". The plan would contain more detailed and specific information about the information I'm requesting.

If this can be forwarded to me without difficulty I'd appreciate it. If it can be reviewed at your office that's o.k. with me. Just let me know which is the most convenient for both of us.

I'D appreciate the information as soon
as possible. I don't know how much
work is involved here but the sooner the
better

Thanks

R.T. Jonczyk
Robert Jonczyk
Po Box 18182
Mpls Mn 55418

Tele (612) 508 6258


cc:  David Marshall
     Fax: 816 285-1889



**NRIPP**
National Roofing Industry
Pension Plan

*Exhibit E*



July 3, 2014

Mr. Robert L Bonczek
PO Box 18782
Minneapolis, MN  55418

Dear Mr. Bonczek:

The National Roofing Industry Pension Plan's records indicate that you are approaching or have reached age 70 and have participated in the Fund at least 5 years without a loss of service.

A vested participant in the National Roofing Industry Pension Plan is eligible to retire at any time after the later of, his 65th birthday or fifth anniversary of participation, and to begin receiving a full Normal Retirement Benefit from the Plan.  The Plan pays benefits to eligible participants who retire and apply for them.

If you are a 5% owner of a contributing employer, you are required to receive your benefits from the Plan no later than the April 1st of the calendar year following the year in which you reach age 70 ½, whether you have retired or not.  If you are not a 5% owner, then your benefits must begin no later than the April 1st following the later of the calendar year in which you retire or the calendar year in which you reach age 70 ½. Please be advised the Internal Revenue Service can charge a significant excise tax of fifty (50) percent on payments that are not distributed after you reach your required beginning date.

Enclosed is an application for you to complete and return to this office at your earliest convenience. Along with the completed application, please submit a copy of your birth certificate, a copy of your spouse's birth certificate and marriage license, if applicable. When the requested information is received and reviewed, if you are due any pension benefits you will be notified of the effective date.

If you have any questions, please do not hesitate to contact the Fund Office.

Sincerely,

Fund Office

Enclosure

cc:      LU # 96



**NRIPP**
National Roofing Industry
Pension Plan



*Exhibit E*

# COPY

July 3, 2014

Mr. Robert L Bonczek
PO Box 18782
Minneapolis, MN  55418

Re:  National Roofers Industry Pension Plan

Dear Mr. Bonczek:

This letter is in regards to your letter dated June 15, 2014 (copy enclosed), in which you are questioning your benefits under the National Roofing Industry Pension Plan (Plan).

On May 23, 2013, you were sent a letter notifying you of the decision regarding your appeal (copy enclosed). The appeal letter very clearly advises you of the earliest date you are able to commence a benefit under the Plan. Please refer to this letter for your concerns regarding this matter.

Per your request, enclosed you will find a copy of the Plan Document Amended and Restated effective January 1, 1999 and the Amendments.

Also, you requested to see how your pension benefit is calculated. Under the rules of the Plan, your benefit must commence no later than April 1st of the year following your attainment of age 70 ½. According to our records, you turned 70 ½ on July 19, 2013, therefore your benefit must commence no later than April 1, 2014.

The total amount of your benefit consists of three separate calculations. This calculation is based on a commencement date of April 1, 2014. At the time your benefit is commenced, you will receive payments back to April 1, 2014. Following is how your benefit is calculated:

Calculation of benefit as of a "freeze" date of December 31, 1986

|  |  |
|---|---|
| *3.00* | |
| Base Plan (4.8 credit x $3.00) | $ 14.40 |
| ($3,477.70 contributions x 4.3%) | $149.54 |
|  | $163.94 |
| Times Conversion Factor | x 1.0282 |
| Benefit as of Freeze date | $168.56 |

Calculation of benefit from 1990 - 2002

| | |
|---|---|
| Base Plan (8.2 credit x $3.00) | $ 24.60 |
| ($12,187.80 contributions x 4.6%) | $560.64 |
| | $585.24 |
| Times Conversion Factor | x 1.0282 |
| Benefit for 1990- 2002 | $601.74 |

Total Benefit Calculation

| | |
|---|---|
| Amount of benefit as of December 31, 1986 | $168.56 |
| Amount of benefit as from 1990 – 2002 | +$601.74 |
| | |
| Subtotal - April 1, 2014 commencement | $770.31 |
| Times Late Retirement Factor | x 2.0920 |
| | |
| Total benefit – April 1, 2014 commencement | $1,611.49 |

Enclosed is a letter regarding the commencement of your benefit at age 70 ½. Included with this letter is an Application for Retirement Benefits. Please complete the Application and return to our office.

Upon receipt of your completed application, you will be sent benefit information based on all hours and credits accrued, along with options available, as provided by the Plan, for disbursement.  You will need to complete the benefit option election form and accompanying forms, which should be returned to our office for final processing.

If you have any questions, please feel free to contact me at 1-800-595-7209 and ask to speak to Chris in the Pension area.

Sincerely,


Chris Reitmeier
Wilson-McShane Corporation
Pension Specialist

Enclosures

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

$1611^{00} = 70\frac{1}{2}$

starting 4-1-2014

& $1328^{00}$ starting.

10-1-14

not sure if option

EXHIBIT 7
NOTICE OF
SUSPENSION

# NATIONAL ROOFING INDUSTRY PENSION PLAN

ZENITH ADMINISTRATORS, INC.
P. O. Box 721680
Houston, Texas 77272-1680
WATS - 800-595-7209 - LOCAL- 713-219-1200 - FAX- 713-219-1299
Web site - www.zenithadm.com

September 18, 2009

*Exhibit 7*

Mr. Robert L Bonczek
PO Box 18782
Minneapolis, MN  55418

**NOTICE OF BENEFIT SUSPENSION**
**DOB: 01/19/1943**
**NRD: 01/19/2008**

Dear Mr. Bonczek:

The National Roofing Industry Pension Plan's records indicate that you are approaching or have attained **age 65** and have participated in the Fund at least 5 years without a loss of service.

A vested participant in the National Roofing Industry Pension Plan is eligible to retire at any time after the later of his **65th birthday** or fifth anniversary of participation and to begin receiving full Normal Retirement Benefits from the Plan.  The Plan pays benefits to eligible participants who retire and apply for them.

You may be eligible to begin receiving pension benefits whenever you wish to stop working.  If you continue to work after your Normal Retirement Date (NRD), your retirement benefit payments will not begin until you decide to actually retire and apply for them.  The Plan is required to commence benefit payments no later than April 1st following the year in which you attain age 70½.

While you are an active employee, you will continue to accrue a benefit under the Plan in accordance with its terms.  It is likely that, because of additional service credit you earn, your monthly pension benefit will be larger when you retire than it would have been had you chosen to retire at your Normal Retirement Date.  The Plan does not, however, make up or otherwise adjust your benefit for months you could have received a Plan payment but chose not to do so.

# NATIONAL ROOFING INDUSTRY PENSION PLAN

ZENITH ADMINISTRATORS, INC.
P. O. Box 721680
Houston, Texas 77272-1680
WATS - 800-595-7209 - LOCAL- 713-219-1200 - FAX- 713-219-1299
Web site - www.zenithadm.com

R. Bonczek
Page Two
September 18, 2009

Simply put, choosing continued active employment is an alternative to retiring and receiving benefits from the Plan. Technically, you have chosen to "suspend" your benefits until you leave active employment, retire and request that Plan benefit payments begin. This is described in the "Late Retirement" provision of the Plan, a copy of which is enclosed. This provision complies with regulations published by the Department of Labor, which may be found in Section 2530.203-3 of the Code of Federal Regulations.

Enclosed is an application for you to complete and return to this office at your earliest convenience. Along with the completed application, please submit a copy of your birth certificate, a copy of your spouse's birth certificate and marriage license, if applicable. When the requested information is received and reviewed, if you are due any pension benefits you will be notified of the effective date.

If you have any questions, please do not hesitate to contact the Fund Office.

Sincerely,

Valerie D. Eleby
Administrative Office

Enclosure

cc: Pension File     **Local Union #96**

EXHIBIT G
INTERFERENCE

9/5/12

Pension Plan
Fund Administrators
Fund Office
Dear Sir

Enclosed please find my completed application package for Retirement. Also enclosed are:

1) original certified birth certificate
2) copies of my DD 214 & DD 215
3) additional identification —
   Driver's License
   Certificate of Completion of Apprenticeship.
   One of my journeyman cards — This one
   from Local 54
   copy of my social security card.

The reasoning behind #3) is that my billfold was stolen twice this summer. — thats twice in my life time. All of my I.D.'s were stolen in addition to those listed above.

On Monday Labor Day I went to my storage locker to get copies of my birth certificate and DD 214/215. There wasn't anything in the file.

So someone has a pretty complete I.D. file on me. Thats the reason for the extra I.D.. The Apprenticeship Completion Certificate is the original. I doubt if anyone else has that but now a days you really don't know

9/51

I have some questions for you so
I thought I'd start a week and then call

Sincerely,

Robert Gonczek
Po Box 18782
Mpls Mn 55418

(612) 508-6288

Encl :

National Roofing Industry
Pension Plan
Fund Administrators,

10/18/12

Dear Sir:

    Enclosed is a complete copy of
the Divorce Decree you Requested
in your 9/28/12 letter (copy enclosed)

    I called down to your office
yesterday and spoke to a woman
named Kay, about getting a break-
down of pension contributions by
company by year. I spoke to some-
one at your office about it before
I first asked about your contributions
which hadn't been made. Then I heard
"Danley was Responsible for that too".

    I already knew that. That's why I'm
asking for the breakdown by company
by year. There are a few others who've
been known to dabble in the pension
fund contribution function beside
Danley but he was a really busy fellow.

    If I had this information, I could
use it to piece together total earnings
over the years.

    My social security payment is way low.
And I no longer have complete records.
On Oct. 17 2005 everything I owned
including Records, were seized by
the Police. It went legal before my

— 1 of 3 —

10/18/12

means. It was supposed to look like a tow for illegal parking. The court found the tow was illegal. However by that time everything I owned was gone.

I managed to get some records out of the pickup at the impound lot. When they knew what I was doing I was locked out of the impound & could not retrieve any more records — i.e. tax returns, pay stubs, union dues receipts etc. I did get the pension contribution (summary) reports but that was only part of my income. I usually had at least two jobs.

Mr. Vanly was also instrumental in this endeavor. He showed up on the police precinct steps on Oct 19 '03 at 8:30 a.m. with two of his gang sta boyfriends - two days after the take down.

I had the pleasure of watching and hearing a 4th officer tell him to get lost - he wouldn't have any thing to do with Vanly.

I was walking by on my way to the grocery store. That made my day.

→ 2 of 3 -

There were others involved. One person was my former sister - named Kay.

You'd be amazed at the number of Kay's I've been running into lately - usually on the phone. I didn't know there were that many Kays in the world and they've all been surfacing in the last few months.

I think its supposed to let the target, me in this case, know that "big sister" and her group is watching.

Actually it really means its time for her and her friends to grow up and head back to the psych wards.

I mentioned earlier in this letter that I'd talked to a Kay yesterday. I hope thats really her name and she's not one of the activists.

Sincerely

R.H. Barrett

P.o. Box 18782
Mpls Mn 55418

# FAX Transmission

Number of pages including cover sheet _3_

Attention: _CHRIS ROTMEIER_

Company: _Wilson-McShane_

Phone: _(952) 854 0795_

FAX: _(952) 851-3514_

Comments: _NREPP Pension_

Date: _4/30/14_

From: _Robert Donczek_

Company: _____

Phone _(612) 508 6258_

---

# FAX Transmission

Number of pages including cover sheet _3_

Attention: _David Marshall_
_US DEPT OF LABOR-EBSA_

Company: _____

Phone: _816-285-1896_

FAX: _816-285-1889_

Comments: _Pension - Rogers NRIPP_

Date: _4/30/14_

From: _Robert Donczek_

Company: _____

Phone: _612-508 6258_



# services
## center

Email: _servicescenter0025@officemax.com_

City: _St. Paul_   State: _MN_   Zip: _55104_

Phone: _651-659-9020_

FAX: _651-659-9032_

U.S. Dept of Labor –
EBSA
Kansas City Mo 64108

4/30/14

Attn: David Marshall

I spoke to you on the phone a short time ago about sending you Pension Documentation and that there would be a delay since I discovered someone had been in my files and removed 33 yrs of quarterly pension contribution reports.

I stated the reason for the delay was that the storage units I keep my files in has been accessed repeatedly without my knowledge or permission and property of value has been stolen

My I.D. and SS cards has been stolen twice along with other I.D. When I first filed for my pension I went to my files to get copies of my birth certificate and discharge certificate. All of the copies were missing.

I'm copying McShane-Williams Pension Administrator on this fax. I'm asking that they take whatever steps are required to ensure no disbursements are made from my pension fund until notified by me in person.

4/23/14
Bonezek

I'll be sending you the Documents
I have, and can find as soon as
possible and will also be filing
in court

Robert Bonezek
Po Box 18782
Mpls Mn 55418

cc: Wilson - Mc Stone
    Fax 952 - 851 - 3514

U.S. Dept of Labor - EBSA
2300 Main St, #1100
Kansas City, Mo., 64108

3/4/14

1 David Marshall

I made a telephone complaint to you and faxed you as well as Wilson-McShane, pension plan administrator on 4/30/14 regarding my NRIPP. At that time you requested a copy of my pension plan and any related documents. The documents I have are listed as enclosures below.

1. Zenith's denial of benefits, (ltr dtd. 5/23/13 (Exc.1)) is the immediate concern. Basically the letter makes no sense. Para 2 of the letter draws a conclusion ("Therefore") from an unknown source stating that my retroactive annuity start date is 10/1/12 rather than the actual date of 1/19/08. (Changing the start date, in itself, constitutes a loss of 3 yrs 10 mos of annuity and late retirement factor (Appendix B, table 4).

v. Zenith states the pension benefit has been stated correctly without showing its computation or late retirement adjustment factors.

r. Zenith goes on to state that I failed to present any evidence demonstrating the fund office was incorrect in denying a late retirement benefit.

This is hard to do considering I's just received the letter.

Pg. 1 of 5

5/4/1

4. Copies of correspondence sent to them on 5/5/12, 10/18/12, 2/14/13, 5/31/13, and 5/10/13 are enclosed. This last letter, in particular, addresses the Retroactive Annuity Starting Date. At that time I requested a Response. There were also a few telephone conversations that proved equally unproductive or informative.

5. The administrator appears to have ignored the "Anti-Cutback Rule" of ERISA designed to prevent Reduction in benefits. Also Doubt if my benefits continued to accrue during the 3yr, 10 mo. cut back period. The plan administrator is accountible for its actions here. I have no idea from the information received, what they've done.

6. An independently prepared schedule, or work-sheet presentation of benefits. Retroactive as well as future benefits showing normal and late Retirement adjustment factor and $, inclusive dates of eligibility, and factors- % rates, $, etc. used in Calculations is necessary.

7. Parts X and XI of the Pension Plan Booklet (enclosed) contain a good deal of information on Denied claims and appeals. I believe I made a good faith effort to address the Denied Claim and just ended up empty handed.

P. 2 of 5

8. I spoke to Valerie Eleby, Zenith, on the phone Regarding Retroactive Benefits Without success. Actually she told me that if I thought my pension eligibility date was 1/19/08 I'd have to prove it. On 5/15/2010 she signed a letter "Notice of Benefit Suspension (Encl 8).

9. Its the changed eligibility date that has to be proven and is thats by the plan administrator not me.

10. I tried to get legal Representation to the point where it was obvious there was none forthcoming. I then tried the D.O.L. who in turn Referred me to the Atty General's office.

PX 18

Claim

11. In the interim I'd called your Kansas City EBSA general tele #. On the second ring I got someone who identified herself as a certified analyst. I called that same general # again and the same thing happened, getting the same person.

12. This sort of thing just doesn't happen when calling a govt office. I went to a pay phone and called the same #. This time I got the standard mechanized answer giving Instructions.

Pg 3 of 5

3/4/14

13. There was interference of some sort going on. I decided to look elsewhere for help. I visited your Downtown Mpls office (371 building) Relating the above wanted. Eventually I ended up calling you.

14. The point I'm trying to make is that I made an extensive and time consuming effort to get help in Resolving the benefit denial and get my pension going.

? { The question now is what assistance could I expect from your office and what should my next move be. I'd appreciate a response very soon. I want to get going on this issue.

Sincerely

Robert Bonczek
P O Box 18782
Mpls, Mn. 55418

(612) 508-6258

Enclosures Attached

Pg 4 of 5

*5/4/14*

*Donczek*

*Enclosures*

1. NRIPP Plan Book
2. 5/23/13 ltr - Zenith
3. 9/5/12 ltr to NRIPP
4. 10/18/12 ltr to NRIPP
5. 2/14/13 ltr to NRIPP - Pension Dept.
6. 5/3/13 Fax to NRIPP - V. Eleby
7. 5/10/13 Fax to NRIPP V Eleby
8. 5/25/10 Notice of Benefit Suspension

# NATIONAL ROOFING INDUSTRY PENSION PLAN
### ZENITH ADMINISTRATORS, INC.
### P. O. Box 721680
### Houston, Texas 77272-1680
### WATS - 800-595-7209 - LOCAL- 713-219-1200 - FAX- 713-219-1299
### Web site - www.zenithadm.com

May 25, 2010

Mr. Robert L Bonczek
PO Box 18782
Minneapolis, MN  55418

**NOTICE OF BENEFIT SUSPENSION**
DOB:   1/19/1943
NRD:   1/19/2008

Dear Mr. Bonczek:

The National Roofing Industry Pension Plan's records indicate that you are approaching or have attained age 65 and have participated in the Fund at least 5 years without a loss of service.

A vested participant in the National Roofing Industry Pension Plan is eligible to retire at any after the later of his 65th birthday or fifth anniversary of participation and to begin receiving full Normal Retirement Benefits from the Plan.  The Plan pays benefits to eligible participants who retire and apply for them.

You may be eligible to begin receiving pension benefits whenever you wish to stop working.  If you continue to work after your Normal Retirement Date (NRD), your retirement benefit payments will not begin until you decide to actually retire and apply for them.  The Plan is required to commence benefit payments no later than April 1st following the year in which you attain age 70½.

While you are an active employee, you will continue to accrue a benefit under the Plan in accordance with its term.  It is likely that, because of additional service credit you earn, your monthly pension benefit will be larger when you retire than it would have been had you chosen to retire at your Normal Retirement Date.  The Plan does not, however, make up for or otherwise adjust your benefit for months you could have received a Plan payment but chose not to do so.

Simply put, choosing continued active employment is an alternative to retiring and receiving benefits from the Plan. Technically, you have chosen to "suspend" your benefits until you leave active employment, retire and request that Plan benefit payments begin.  This is described in the "Late Retirement" provision of the Plan, a copy of which is enclosed. This provision complies with regulations published by the Department of Labor, which may be found in Section 2530.203-3 of the Code of Federal Regulations.

Enclosed is an application for you to complete and return to this office at your earliest convenience.  Along with the completed application, please submit a copy of your birth certificate, a copy of your spouse's birth certificate and marriage license, if applicable.  When the requested information is received and reviewed, if you are due any pension benefits you will be notified of the effective date.

If you have any questions, please do not hesitate to contact the Fund Office.

Sincerely,

Valerie D. Eleby
Administrative Office

Enclosure

cc: Pension File  Local Union #96

Encl (8)