**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| ROBERT BONCZEK, | Civil No. 14-3768 (JRT/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| BOARD OF TRUSTEES NATIONAL ROOFING INDUSTRY PENSION PLAN and ZENITH ADMINISTRATORS, *Third-Party Administrative Manager*, | **AND ORDER** |
| Defendants. | |

Robert Bonczek, P.O. Box 18782, Minneapolis, MN 55418, *pro se*.

Librado Arreola, **ASHER, GITTLER & D'ALBA, LTD.**, 200 West Jackson Boulevard, Suite 1900, Chicago, IL 60606; Thomas C. Atmore and Thomas R. Haugrud, **LEONARD, O'BRIEN, SPENCER, GALE & SAYRE, LTD.**, 100 South Fifth Street, Suite 2500, Minneapolis, MN 55402, for defendants.

Plaintiff Robert Bonczek brings this ERISA action against Defendants Board of Trustees National Roofing Industry Pension Plan (the "Trustees") and Zenith Administrators ("Zenith"), challenging the Trustees' decision regarding the type and start date of his pension benefits. Bonczek also brings several other related claims. All parties filed cross motions for summary judgment. Because there are no genuine issues of material fact regarding whether the Trustees' abused their discretion and also because Bonczek has not offered evidence showing a genuine factual dispute for his other claims, the Court will grant summary judgment in favor of Defendants. The Court will also deny

Bonczek's summary judgment motion and deny as moot his motion to amend his request for relief.

## BACKGROUND

The National Roofing Industry Pension Plan (the "Plan") "is a multi-employer employee benefit trust fund" maintained under the Employee Retirement Income Security Act ("ERISA"), the Internal Revenue Code, and the Taft-Hartley Act.  (Aff. Michael J. Theirl ("Theirl Aff.") ¶¶ 7, 13, Dec. 7, 2015, Docket No. 125.)  The Plan, which is administered by the Trustees and third-party administrator Zenith,[1] provides pension benefits to vested participants and their beneficiaries.  (*Id.* ¶¶ 14-16.)  Bonczek has a vested right to benefits under the Plan because he worked for employers that contributed to the Plan on his behalf from 1979 until 2002.  (*Id.* ¶ 17.)  The Plan governing Bonczek's benefits is the 1999 version because that is the Plan that was in effect as of 2002, the last year he worked in "Covered Employment."  (*Id.* ¶ 24; *id.*, Ex. F at 73[2].)

Under the Plan, a vested participant, such as Bonczek, is eligible to retire and begin receiving pension benefits after his or her 65th birthday.  (*Id.*, Ex. H at 78.)  The Plan defines retirement at age 65 as the "Normal Retirement Age."  (*Id.*)  When an employee elects to retire at the Normal Retirement Age, payment of benefits commences

> on the first day of the month as of which the Employee's application for a Pension is approved by the Trustees . . . .  Provided, however, Pension payments will be effective on the first day of the month following the

---

[1] Zenith is no longer the third-party administrator for the Plan, but was during the time period relevant to this lawsuit.  (Theirl Aff. ¶¶ 3-6.)

[2] All record citation page numbers refer to CM/ECF pagination.

month in which the completed application is filed in the offices of the Fund Administrator or the Employee's Normal Retirement Date, whichever is later.

(*Id.*)

A vested participant may also, "on his Normal Retirement Date, elect to postpone his Pension payments until a later date." (*Id.*, Ex. F. at 74.)  When a vested participant chooses to take this "Late Retirement Pension," payment of benefits commences

on the first day of the month as of which the Employee's application for a Pension is approved by the Trustees . . . .  Provided, however, Pension payments will be effective on the first day of the month following the month in which the completed application is filed in the offices of the Fund Administrator or the Employee's Late Retirement Date, whichever is later.

(*Id.*, Ex. G at 77.)  Notably, a vested participant who elects to take a Late Retirement Pension will receive a higher monthly benefit than he or she would have received had he or she retired at the Normal Retirement Age, to account for the months that the participant could have, but did not, receive a pension benefit. (*Id.*, Ex. F at 74.)

Regardless of whether a vested participant elects to retire at the Normal Retirement Age or take a Late Retirement Pension, the participant is not entitled to payment of benefits until he or she submits an application to the Trustees:  "Benefit payments will commence the first of any month following satisfaction of both (a) the requirements prescribed for that type of pension, and (b) the receipt of the completed application in the offices of the Fund Administrator."  (Aff. of Thomas C. Atmore ("Atmore Aff."), Ex. 1 at 52, Mar. 16, 2016, Docket No. 149; *see also* Theirl Aff., Ex. G at 77; *id.*, Ex. H at 78.)  Additionally, subject to certain exceptions not relevant here,

pension payments must commence when the vested participant reaches age 70½.  (*See* Atmore Aff., Ex. 1 at 53; *id.*, Ex. 2 at 13-14.)

Here, Bonczek turned 65 on January 19, 2008, and was thus eligible to take a Normal Retirement Age pension at that time.  However, Bonczek did not submit a benefits application until over four and a half years later, on September 10, 2012.  (Theirl Aff., Ex. A at 3-16.)  On January 31, 2013, Zenith sent Bonczek a benefits election form, which contained ten different benefit options from which he could choose.  (*Id.*, Ex. D at 63-68.)  Each option included a payment start date of either October 1, 2012, or February 1, 2013, reflecting Defendants' determination that Bonczek had elected to take a Late Retirement Pension.  (*Id.*)

Bonczek did not complete and return the election form and instead sent letters to Zenith on February 14, 2013, and May 10, 2013, appealing, among other things, the payment start dates.  (*Id.*, Ex. C at 20-21; *id.*, Ex. D at 25-27.)  In his letters, Bonczek argued that he was entitled to a start date retroactive to his 65th birthday, as well as a lump sum payment for all of the months he did not receive his pension after he turned 65.  (*Id.*, Ex. C at 20-21; *id.*, Ex. D at 25-27.)  Pursuant to the Plan's dispute resolution process, the Trustees heard Bonczek's appeal on May 20 and 21, 2013, and denied it, finding that the benefits calculations were accurate.  (*Id.*, Ex. E at 69-72.)  The Trustees concluded that Bonczek, by submitting his application in 2012 rather than in 2008 when he turned 65, had elected to take a Late Retirement Pension.  (*Id.* at 70-72.)  In their written decision, the Trustees noted:

> Mr. Bonczek is entitled to receive his pension only as of October 1, 2012 and not as of January [19], 2008, when he turned 65. Moreover, his benefit has been computed correctly, which is to commence as of the date of his retirement, October 1, 2012, but with the late retirement adjustment factors calculated to reflect his Late Retirement.

(*Id.* at 71.) The Trustees further "noted that Mr. Bonczek has failed to present any evidence to demonstrate that the decision . . . was incorrect in denying him a Late Retirement Benefit as of January [19], 2008." (*Id.*)

Bonczek commenced this action on September 23, 2014, challenging the Trustees' denial of his appeal. (Compl., Sept. 23, 2014, Docket No. 1.) Bonczek argues that he is entitled to pension benefits retroactive to January 19, 2008, including monthly benefits in the amount of $1,344.97 going forward, as well as a one-time lump sum payment for all of the months that he did not receive his benefits after he reached age 65 (at a rate of $1,344.97 per month). (*Id.*, Attach. 1 at 14.) Although the complaint is not entirely clear, Bonczek also appears to bring claims for breach of fiduciary duty, conversion, and misrepresentation. (*See id.* at 9, 12-14.) Bonczek additionally claims that the Trustees violated the Plan and federal law by failing to commence payment of his benefits when he reached the age of 70½. (*Id.* at 11.) All parties have filed cross motions for summary judgment. Bonczek has also filed a motion to amend his request for relief.

## ANALYSIS

### I.    STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of

law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial."  *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F .3d 1110, 1113 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 247-49).

## II.    DEFERENCE TO TRUSTEES

The Court reviews a challenge to the denial of ERISA benefits *de novo* "unless the benefit plan grants the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan.  When a plan gives discretion to the plan administrator, then a plan administrator's decision is reviewed judicially for an abuse of discretion."  *Ortlieb v. United HealthCare Choice Plans*, 387 F.3d 778, 781 (8th Cir. 2004) (citation omitted) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115

(1989)).  An ERISA plan will be found to confer discretion to the administrator if it uses "explicit discretion-granting language," although inclusion of the word "discretion" is not required.  *Hankins v. Standard Ins. Co.*, 677 F.3d 830, 834-35 (8th Cir. 2012). Additionally, the Eighth Circuit has held "that policy language granting the administrator **sole** responsibility for the administration and interpretation of the plan gives discretionary authority that triggers deferential review."  *Id.* at 835 (emphasis added) (citing *Kennedy v. Georgia–Pacific Corp.*, 31 F.3d 606, 609 (8th Cir. 1994)).

Here, the Court finds that the Plan grants the Trustees discretionary authority. First, the Plan explicitly provides that "[t]he Trustees . . . shall . . . be the **sole** judges of . . . the application and interpretation of the Plan, and decisions of the Trustees or their delegates shall be final and binding."  (Theirl Aff., Ex. I at 79 (emphasis added).) Moreover, the Plan expressly invokes the abuse of discretion standard: "[T]he decision of a majority of the [Trustees] shall be binding upon all persons dealing with the Trust or claiming any benefit thereunder, except to the extent that such decision may be determined to be **arbitrary or capricious**[3] by a court."  (*Id.*, Ex. J at 81 (emphasis added).)  This language is sufficient to trigger deferential review.

---

[3] "[R]eview for an abuse of discretion or for being arbitrary and capricious is a distinction without a difference, because the terms are generally interchangeable."  *West v. Local 710, Int'l Bro. of Teamsters Pension Plan*, 528 F.3d 1082, 1085 n.2 (8th Cir. 2008) (alteration in original) (internal quotation marks omitted) (quoting *Schatz v. Mut. of Omaha Ins. Co.*, 220 F.3d 944, 946 n.4 (8th Cir. 2000)).

- 7 -

## III.   REASONABLENESS OF DECISION

"Under an abuse of discretion standard of review, a plan administrator's decision will stand if reasonable; '*i.e.*, supported by substantial evidence.'" *Ortlieb*, 387 F.3d at 781 (quoting *Fletcher-Merrit v. NorAm Energy Corp.,* 250 F.3d 1174, 1179 (8ᵗʰ Cir. 2001)).   "Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Fletcher-Merrit*, 250 F.3d at 1179).  In applying this standard, the Court considers five factors:

> (1) whether the administrator's interpretation is consistent with the goals of the Plan; (2) whether the interpretation renders any language in the Plan meaningless or internally inconsistent; (3) whether the administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the administrator has interpreted the relevant terms consistently; and (5) whether the interpretation is contrary to the clear language of the Plan.

*Shelton v. ContiGroup Cos., Inc.*, 285 F.3d 640, 643 (8ᵗʰ Cir. 2002).   Additionally, the Court "must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales."  *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 999 (8ᵗʰ Cir. 2005) (quoting *Conley v. Pitney Bowes,* 176 F.3d 1044, 1049 (8ᵗʰ Cir. 1999)).  Altogether, the Court will affirm a plan administrator's decision so long as "a reasonable person **could** have reached a similar decision, given the evidence before him," even if a reasonable person also could have reached a different decision. *Prezioso v. Prudential Ins. Co. of Am.*, 748 F.3d 797, 805 (8ᵗʰ Cir. 2014).

At issue here is whether the Trustees abused their discretion in determining the type and the start date of Bonczek's pension benefits.  Bonczek argues that he is entitled

to a Normal Retirement Age pension retroactive to January 19, 2008, because that is the date that he turned 65.  Defendants, on the other hand, argue that the Trustees properly determined that Bonczek was only entitled to a Late Retirement Pension retroactive to October 1, 2012, at the earliest, because he did not submit his application for benefits until September 10, 2012.

As far as the Court can tell, the Plan does not include any provision directly governing what happens when, as here, a vested participant waits four years to submit an application but claims to have retired at the Normal Retirement Age of 65.  The Plan does, however, include two pertinent provisions.  First, the Plan provides that a vested participant may "elect" to take a Late Retirement Pension.  (Theirl Aff., Ex. F. at 74.) Second, the Plan states that a vested participant is not entitled to payment of benefits until he or she submits a completed application form.  (Atmore Aff., Ex. 1 at 60; *see also* Theirl Aff., Ex. G at 77; *id.*, Ex. H at 78.)  In light of these provisions, the determinative questions are thus whether it was reasonable, or an abuse of discretion, for the Trustees to conclude that (1) Bonczek elected to take a Late Retirement Pension based on the fact that he did not submit his benefits application until September 10, 2012, and (2) Bonczek was only entitled to benefits retroactive to October 1, 2012, the month after he submitted his application.  For the reasons that follow, the Court finds that the Trustees' determinations were reasonable and based on substantial evidence.

First, there is nothing to suggest that the Trustees' interpretations are inconsistent with the goals of the Plan.  The goal of the Plan ostensibly is to provide vested participants with monthly pension benefits, and the Trustees' decision in no way thwarts

that goal.  The Trustees have not taken any benefits away from Bonczek – to the contrary, Bonczek will receive a full Late Retirement Pension.

Second, there is no indication that the Trustees' interpretations render any language in the Plan meaningless or internally inconsistent, or that the Trustees interpreted the relevant terms inconsistently or in a manner that is contrary to the clear language of the Plan.  As noted above, the Plan is silent on what happens when a vested participant delays submitting an application for several years but claims to have retired at the Normal Retirement Age.  The Plan simply provides that a vested participant may "elect to postpone his Pension payments," (Theirl Aff., Ex. F at 74), and here, the Trustees had substantial evidence supporting their decision that Bonczek made this election.  Most significantly, Bonczek did not submit his benefits application until four years after he turned 65, even though he could have submitted it when he turned 65.  Additionally, the Trustees had evidence before them that Bonczek received a copy of the benefits application at least as early as 2010, but did not submit it for approximately two more years.  (*Id.*, Ex. E at 70-71.)  On this evidence, it was reasonable for the Trustees to conclude that Bonczek, by failing to submit an application until 2012, intended to postpone his receipt of benefits and take a Late Retirement Pension.

The Trustees' decision regarding the payment start date was also entirely consistent with the Plan.  The Plan expressly provides that Late Retirement Pension payments are to commence "on the first day of the month following the month in which the completed application is filed in the offices of the Fund Administrator or the Employee's Late Retirement Date, whichever is later."  (*Id.*, Ex. G at 77.)  Here, Bonczek

submitted his application on September 10, 2012, making October 1 the appropriate start date.

Third and finally, there is nothing to suggest that the Trustees' interpretations conflict with the substantive or procedural requirements of the ERISA statute.  Bonczek has not cited, and the Court cannot find, any such conflict.

Bonczek argues that the Trustees abused their discretion because their start date determination conflicts with the Summary Plan Description ("SPD").  Bonczek relies on two pages within the SPD, which describe the process for electing a "retroactive annuity starting date."  (Compl., Attach. 2 at 25-26.)  Bonczek contends that he is entitled to a retroactive annuity start date corresponding to his 65th birthday because that is the Normal Retirement Age.  Yet even if the court were to assume that the SPD was binding on the Trustees,[4] Bonczek's argument does not show abuse of discretion.  "Retroactive annuity starting date" is a term of art within the SPD, and only arises when the Plan administrator fails to provide a vested participant with timely notice of his or her pension benefits.  (*Id.*)  When timely notice is not given, the participant may "elect . . . to have benefits commence" on the date that benefits would have commenced had timely notice been given.  (*Id.*)  This earlier start date is defined as the "retroactive annuity starting date."  (*Id.*)  Here, Bonczek has not offered any evidence or made any arguments that he did not receive timely notice of his pension benefits.  More importantly, there is no indication that Bonczek raised this argument to the Trustees during his appeal.

_____

[4] The Eighth Circuit has recognized that in certain circumstances, an SPD can be binding on a plan administrator.  *See Jobe v. Med. Life Ins. Co.*, 598 F.3d 478, 481-82 (8th Cir. 2010).

Accordingly, Bonczek's reliance on the SPD is unavailing – the Trustees did not abuse their discretion by failing to consider an argument that Bonczek did not make. *See King*, 414 F.3d at 999 (noting that courts "must focus on the evidence available to the plan administrators at the time of their decision" and not "new evidence" or "*post hoc* rationales").

Overall, because the Trustees' decision was reasonable and based on substantial evidence, the Court will not disturb it here. Defendants are thus entitled to summary judgment – no genuine issue of material fact remains for a jury to resolve.

## IV.   OTHER CLAIMS

Bonczek also appears to bring claims for breach of fiduciary duty, conversion, and misrepresentation. But the Court, having searched the record, cannot find any supporting evidence, let alone evidence showing a genuine issue of material fact necessitating trial. Bonczek additionally appears to allege that the Trustees violated the Plan and federal law by failing to commence payment of his pension benefits when he reached the age of 70½. But this claim also fails because Bonczek has admitted that Defendants attempted to commence payment and he refused to accept the check. (Pl.'s Resp. to Defs.' Mot. for Summ. J. at 11-12, Dec. 21, 2015, Docket No. 128; *see also* Theirl Aff. ¶ 34.) Finally, to the extent that Bonczek brings any other claims not directly addressed within this order, the Court finds that Bonczek has not offered sufficient evidence showing a triable issue. Accordingly, the Court will grant summary judgment for Defendants on these other claims.

**CONCLUSION**

The Court appreciates the fact that Bonczek is concerned about the accuracy of his pension benefits.  Bonczek indisputably earned his pension based on twenty-three years of service, and the Court does not doubt that Bonczek is relying on his pension to help fund his retirement.  But Bonczek seems to be laboring under a misconception as to how his pension works and how his benefits are calculated.  Bonczek appears to believe that by taking a Late Retirement Pension retroactive only to October 1, 2012, he will forfeit over four years' worth of pension benefits.  That is simply not true.  By taking a Late Retirement Pension, Bonczek will receive monthly payments that are larger than he would have received had he applied for benefits at age 65, the Normal Retirement Age.  These larger monthly payments account for the months that Bonczek did not receive his pension.  Thus, while it may take Bonczek a few more years to collect his full benefits, he will still receive all of his benefits.  Simply put, the Trustees have not stolen, converted, suspended, or denied Bonczek any monetary amount to which he is entitled.

**ORDER**

Based on the above, all files, records, and proceedings here, **IT IS HEREBY ORDERED** that

1.      Defendants' motion for summary judgment [Docket No. 122] is **GRANTED**.

2.      Plaintiff's motion for summary judgment [Docket No. 82] is **DENIED**.

- 14 -

3.     Plaintiff's motion to amend request for relief [Docket No. 138] is **DENIED**

**as moot**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:   July 28, 2016                         ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                      JOHN R. TUNHEIM
                                                 Chief Judge
                                          United States District Court